## ADAMS et al. *v*. THE BANK OF LOUISIANA.

3  351
115 1062

Where there are several debtors, whether each be liable for the whole debt or only for a portion of it. but one of them is primarily liable, and a portion of the debt is received from him, the obligations of the others will be diminished to the extent of the sum re· ceived.

Imputation must be made at the time of payment; it cannot be made afterwards.

Where an imputation of payment is made by the creditor in the receipt he gives, it must be equitable to be valid.

Where all things are equal, and there has been no imputation of payment, it must be made proportionably. C. C. 2162.

**A** PPEAL from the Parish Court of New Orleans, *Maurian*, J. C. M. Conrad and *Barker*, for the plaintiffs. *L. Peirce*, for the appellants. The judgment of the court was pronounced by

ROST, J. A short time before the inception of the legal proceedings by which the Exchange Bank was forced into liquidation, two checks were drawn on that institution by the settling clerk of the league of bank presidents, for balances due the other banks, one in favor of the Improvement Bank, for about $92,000, the other in favor of the Union Bank for $59,813 86, this last being the one on which this suit is brought. These checks were protested for non-payment, and the Union Bank instituted upon the one it held a suit against the Exchange Bank; but before a judgment could be obtained the bank was forced into liquidation. The Union Bank afterwards sold different portions of the check, which were paid by the Exchange Bank, and in January, 1845, it sold the entire check to *Hermann*, under whom the plaintiffs claim, stating, in the transfer. that settlements had at various times been made upon it to the amount of $33,775. The commissioners of the Improvement Bank brought suit directly against the other banks for the respective shares, due by each on the check of $92,000, in conformity with the agreement under which those checks were issued and received. The court of the first instance rendered a decree against each of the banks, the Union Bank among the. rest, for their proportion of the amount. On appeal, this judgment was affirmed by the Supreme Court; the opinion of the court, to which we refer for a more particular statement of the facts of the case and of the questions it-decides, will be found in 10 Rob. R. p. 14. The only difference between that case and the present is that, the parties are not the same, and that in this case the aggregate sum of $33,775, has been paid upon the check by the Exchange Bank, without any indication,by the holder, of the particular banks from whose liability the amount thus satisfied was to be deducted.

The plaintiffs claim the amount for which the defendants were originally bound on the entire check. The defendants resist the claim on all the grounds assumed by the defendants in the former case, and further, on the ground that the Union Bank had withdrawn from the compact under which the check was issued, and cannot claim the benefit of it. They finally plead that, if liable at all, the contribution due by them ought to be calculated upon the residue, after deducting what has been received on the check. There was judgment in fa- .vor of the plaintiffs according to the prayer of the petition, and the defendants appealed.

ADAMS
*v.*
BANK OF LOUI-
SIANA.

It was not considered by the Supreme Court in the former case that, the Union Bank had withdrawn from the compact, and nothing has been shown to authorize that conclusion. We feel no disposition to open anew any of the questions settled in that case. The decision carries into effect the real intentions of the league of bank presidents, and it is now too late to question the authority of that association. However deplorable the infatuation which led to its formation, the banks have ratified its acts, and must execute them in good faith. Under this view of the case, the plaintiffs are entitled to recover; and the only question remaining for our consideration is, as to the amount for which judgment should be rendered.

The plaintiffs admit that where there are several debtors, each liable for the whole debt, but one of whom is primarily liable, and a portion of the debt is received from the principal debtor, the obligation of the others is diminished to the extent of the sums received. But they contend that this principle does not apply to the present case, because each of the contributing banks was not liable for the whole amount of the check. We do not perceive the applicability of this distinction. The league of presidents was an association of all the banks for certain specific purposes. That association drew checks, for the whole amount of which it was liable, in case of non-payment by the debtor banks. The manner in which the members of the association were to contribute to the payment, did not change the nature of the obligation. The drawer and the drawee of the check were each liable for the whole debt. Suppose that in the suit instituted by the Union Bank against the Exchange Bank, the whole amount of the check, except the sum now claimed, had been recovered. Can it be believed that the plaintiffs would have the right to exact that entire balance from the defendants, and to absolve all the other banks from their obligation to contribute? No tribunal would sanction a proceeding which would make the administration of justice depend, not upon the fair intendment of the contract, but upon the caprice of one of the parties to it.

Place the case on the most favorable grounds for the plaintiffs—admit that each bank should be considered as a drawer of the check for its respective share, and that the Union Bank could, as the plaintiffs did afterwards, have transferred their claim against any one of the debtors, without prejudice to their rights against the others, no such transfers are shown to have been made. The Union Bank received partial payments from the Exchange Bank, without making any imputation at the time. Conceding that when the debtor does not make the imputation, the creditor may do so in the receipt which he gives, and that the Union Bank might in their receipts have imputed those payments to the shares of the insolvent banks, it did not so impute them, and the rule of law is that the imputation must be made at the time of the payment, and is not permitted afterwards. Dummodò in re præsenti fiat, in re agendâ, ut vel creditori liberum sit non accipere, vel debitori non dare, si alio nomine exsolutum quis eorum velit; posteà non permittitur. (46. 2, 3.) ff. de Solut. Pothier, Oblig. no. 565. Even in cases where the imputation is made by the creditor in the receipt he gives, it must be equitable in order to be valid.

The association of the creditor banks was primarily bound for the whole amount of the check after its protest, and all those banks had an equal interest in the payment of it by the Exchange Bank. The payments made by the latter inured to the benefit of the association, under the well known rule that where all things are equal, and there has been no imputation, it must be made proportionally. C. C. 2162.

The very words of the transfer of the Union Bank show this to have been the understanding of the parties at the time. It subrogates the purchaser to all the rights of the Union Bank, against the several banks liable to contribute to the payment, not of the entire check, but of the balance due on it, and it does not impute the sums received to the shares due by any particular bank.

The amount received by the Union Bank extinguished an equal amount of the original debt. The plaintiffs have deprived themselves of the power to subrogate the defendants to any portion of it, and are only entitled to a judgment for the proportional share due by the defendants on the remainder. Under the opinion in the former case, in which we concur, the plaintiffs are further entitled to interest at the rate of six per cent per annum, from the date of the check, on the judgment.

It is therefore ordered that the judgment in this case be reversed, and that the plaintiffs recover from the defendant the sum of $2,830, with interest at the rate of six per cent per annum from the 26th February, 1842, till paid, and the costs of the court below; those of this appeal to be paid by them.