The opinion of the court was delivered by
Watkins, J.
As there is a very clear presentation of plaintiffs’ case made in the briefs of their counsel we extract and reproduce it thus:
“ Plaintiffs, the widow and heirs of the late Jas. B. Williams, of Morehouse parish, obtained in this case a writ of injunction against the execution by executory process of an act of mortgage executed by decedent on the 24th of May, 1889, in favor of Francis Smith, Caldwell & Co., to secure the payment of the following promissory notes:
One for two thousand six hundred and four dollars and eighty cents, due January 1, 1890.
One for three thousand six hundred and fifty dollars, due January 1, 1891.
One for four thousand five hundred and fifty dollars, due Jannary 1, 1892.
One for four thousand three hundred and fifty dollars, due January 1, 1893.
One for four thousand one hundred and fifty dollars, due January 1, 1894.
One for three thousand nine hundred and fifty dollars, due January 1, 1895.
One for three thousand seven hundred and fifty dollars, due January 1, 1896.
One for four thousand and fifty dollars, due January 1, 1897.
One for four thousand three hundred dollars, due January 1, 1898.
One for eleven thousand dollars, due January 1, 1899.
Amounting in the aggregate to the sum of forty-six thousand *1279 three hundred and fifty-four dollars and eighty cents, and all bearing interest at eight per cent, per annum after their respective maturities.
The injunction was obtained on the following grounds:
First. That although the mortgagors executed a mortgage to secure the payment of notes amounting in the aggregate to forty-six thousand three hundred and fifty-four dollars and eighty cents, they only received, and the mortgage so recites, the sum of twenty-seven thousand five hundred dollars. That the difference between the sum received and the face of the notes represents usurious interest, which was added to the amount received and included in the face of the notes. That the said sum of eighteen thousand eight hundred and fifty-four dollars and eighty cents, being the excess of the amount actually received, and which is composed of usurious interest charges on the sum received, is not due by them, because this amount could only be due at the expiration of the period of time for which said loan was obtained, and the same was to run, viz.: the 1st of January, 1899. That the note due January 1, 1890, amounting to two thousand six hundred and four dollars and eighty cents; that due January 1, 1891, amounting to two thousand eight hundred and fifty dollars, and that due January 1, 1892, amounting to four thousand five hundred and fifty dollars, were paid in full at their respective maturities, and that a payment of two thousand four hundred and three dollars in addition was made by Mrs. Williams on the note due January 1, L893, making an aggregate of thirteen thousand two hundred and seven dollars and eighty cents which has been paid on account of said loan of twenty-seven thousand five hundred dollars, and which would leave a balance of only about fourteen thousand dollars unpaid, excluding the amount mentioned as usurious interest.
It is further alleged that the deceased, James B. Williams, only acknowledged an indebtedness of twenty-seven thousand five hundred dollars to Francis Smith, Caldwell & Co., in the act of mortgage, although the notes executed and paraphed and identified with the same represent the aggregate sum of forty-six thousand three hundred and fifty-four dollars and eighty cents, which difference, as above set forth, is interest anticipated on the principal sum advanced, supposing and calculating that said loan would continue or run until January 1,1899, and that by reason of the alleged transfer and assignment of said notes and mortgage by the mortgagees, Francis Smith, *1280 Caldwell & Co., to the American Freehold Land Mortgage Company, of London, Limited, and the latter’s procedure and attempt to terminate the time for which said loan was made and was to mature, the aforesaid sum, and which is interest on the sum of twenty-seven thousand five hundred dollars, less the sum paid and herein-above set forth, and up to the date of said payments since the maturity of the note due January 1, 1898, and upon which a payment was made of two thousand four hundred and three dollars.
Second. It is further alleged that the stipulations in the act of mortgage made May 24, 1898, are exceedingly onerous and of no effect and not binding, because the promise to pay interest on interest is contrary to law and vitiates the obligation.
Third, That the defendant mortgage company has proceeded under executory process against the plantations covered by the mortgage, to sell property which is not covered by the mortgage, nor rendered immovable by destination, viz.: One bay horse colt, which is not a work animal, and one thousand bushels of corn, which has been gathered, and four tons of hay, also gathered, neither of which are in any manner attached to the mortgage premises nor immovable by destination.
Fourth. That the writ of seizure and sale was prematurely issued, and before the expiration of the legal delays given to the mortgage debtors. That the writ of seizure and sale itself directs the seizure of the property above described, which is not covered by the act of mortgage, and finally, that no demand of payment of the notes was ever made at the office of Francis Smith, Caldwell & Co., at San Antonio, Tex., where the same were made payable.
An injnnction was prayed for and obtained, and five hundred dollars general damages and six hundred dollars special damages, coun - sel fees, claimed for the wrongful issuance of the writ of seizure and sale, and the illegal execution thereof.
The defendant appeared and pleaded an exception of no cause of action, which the District Judge sustained, except as to the allegation that property had been seized under the writ not mentioned in the act of mortgage, and not immovable by destination. Upon this point he held that plaintiffs were entitled to introduce evidence.
The defendant thereupon answered to so much of plaintiffs’ petition as is not covered by the decree of the court on the exception of no cause of action. Averred that the corn and all the live stock *1281 that was seized under the writ enjoined were placed on, or were raised on the plantation, seized for the purpose of being used thereon, and were necessary for the use of said plantation, and were immovable by destination, and subject to seizure under the writ. They denied that plaintiffs were in any manner damaged by the seizure in this suit.
Wherefore, they pray for dissolution of the injunction, and that the sale be proceeded with. •
The foregoing statement admits and shows that the notes falling due on January 1, 1890; January 1, 1891; January, 1892, respectively, were fully and completely paid and discharged; and that the sum of 82403 was paid on the note which went to maturity on the 1st of January, 1893.
Consequently we are dealing with the balance due on the fourth note last mentioned, and the remaining six of the series.
The following is the synopsis of the claims of the plaintiffs, as they are appreciated by defendant’s counsel and reproduced in their brief, and which we have extracted therefrom for convenient reference, viz.:
While the petition is vague and indefinite, possibly by liberal construction it may be said to present the following propositions:
1. That it is not lawful to charge more than 8 per cent, interest, even though the same be capitalized in the face of the notes.
2. That a negotiable promissory note, due in the future, according to its terms, can not be brought to an immediate maturity through a clause in the mortgage given to secure the same, authorizing the mortgagee to declare the debt or note due upon default of any of the provisions found in the mortgage.
3. That corn, hay, fodder and other things of a like nature are not immovable, and not therefore subject to the mortgage.
4. That the advertisement of property, seized under executory process, on the day of seizure, even though thirty-three clear days intervened between the seizure and sale, is illegal, null and void.
5. That where the defendant resides more than twenty miles from the judge granting the order, a seizure made on the fourth day before notice is absolutely null and void, even though the required time has elapsed before the advertisement, and where the record shows that the defendants have appealed from the order of seizure and sale.
*1282 6. That a presentment of the mortgage notes and a demand of payment at the place designated must be alleged and proved to authorize executory process.
On the trial proof was administered, a judgment rendered dissolving plaintiffs’ injunction, without damages, requiring the sheriff to proceed with the sale, and from that judgment the plaintiffs’ have appealed.
I.
The plaintiffs’ first and principal proposition is that of the aggregate sum of forty-six thousand three hundred and fifty-four dollars and eighty cents, represented by the ten notes, only twenty-seven thousand five hundred dollars were borrowed of the mortgagees— the difference of eighteen thousand eight hundred and fifty-four dollars and eighty cents representing illegal and usurious interest. That having paid thirteen thousand two hundred and seven dollars and eighty cents, this amount is to be credited upon the said principal, and that after making this credit there will remain a balance of only fourteen thousand dollars due.
This statement is erroneous and inconsistent with the plaintiffs’ own admissions to the effect that the three first and a portion of the fourth notes had been paid by the mortgagor prior to the issuance of the order of seizure and sale. Consequently there was no payment on account of the principal as a whole. On the 10th of December, 1894, when the order of seizure was given, there was but the balance of one note due — six not being yet due. And the contention of the mortgage company is that by a clause in the act of mortgage the default of the mortgagor in making payment of any one of the notes matured and precipitated the payment of the remainder of the series.
As none of the series bear interest until after maturity the controversy is practically narrowed to whether the defendant is entitled to the entire amount of the notes as they stand, or the plaintiffs to have the unearned interest deducted therefrom.
The clause in the act of mortgage which is relied upon is as fol - lows, viz.:
“If said notes hereby secured or any one of them are not promptly paid at maturity, then all the notes remaining unpaid at the time of such default and all interest thereon shall at the option *1283 of the holders of said notes and without any notice to appearers be deemed due and payable.”
The question of law thereon raised is whether a negotiable promissory note which on its face is due in the future can be brought to its maturity through stipulation in the act of mortgage securing its payment, that a simple default in discharging a prior number of the series shall have that effect.
This is quite an unfamiliar proposition to this court, though it and other analogous questions have been decided frequently in other jurisdictions. We will content ourselves with citing the-authorities pro and eon, without aligning the court on either side of the controversy for the present: Railway Company vs. Sprague, 103 U. S. 761; White vs. Miller, 52 Minn. 367; McClelland vs. Bishop, 42 Ohio St. 113; Wheeler Manufacturing Company vs. Howard, 28 Fed. Rep. 74; Noell vs. Gaines, 68 Mo. 649; Chambers vs. Marks, 93 Ala. 412; Jones on Mortgages, Secs. 1179, 1175; Buchanon vs. Insurance Company, 96 Ind. 510; Gregory vs. Marks, 8 Bissel, 44; 62 Mo. 440; 14 Wis. 313; 73 Texas, 196.
In our own reports we find some adjudications which have some bearing on the question, though not decisive of it, and amongst the. number we cite the following, viz.: Broadwell vs. Rodrigues, 18 An. 77; Ives and Wife vs. Citizens Bank, 15 An. 83; McDonald vs. Gailand, 7 An. 143; LeBlanc vs. Dubroca, 6 An. 362; Mullen vs. Harding, 12 An. 271; Jouet vs. Mortimer, 29 An. 206; New Orleans Mutual Insurance Company vs. Bagley, 19 An. 89; Martin vs. Sheriff, 37 An. 766; Blanks vs. Insurance Company, 36 An. 599; Edson vs. Insurance Company, 35 An. 353.
But possibly the strongest and most pertinent case is that of Stein vs. Brunner, 42 An. 722. For the statement that this court had been relieved from the necessity of deciding whether the maturity of the notes not due can be thus precipitated, in so far as the capital is concerned, we refer to the following extract from the brief of plaintiffs’ counsel; viz.:
“Certainly it can not be contended that the mortgagees have not the right to avail themselves of the option reserved in the contract, 1 that said notes, and without any notice to the makers, shall be. deemed due and payable; ’ but the right to demand the return of the money which they have loaned, with the interest stipulated thereon, certainly should not be so construed as to give them the *1284 right of speculation, on their unfortunate debtors, and to demand, not only the instant return of the loan, but the payment of interest upon it for four years thereafter.”
On the contrary, it is insisted, on the part of the mortgage company, that it is entitled to the full value of all the unpaid notes, with eight per cent, interest after maturity, because it is “ so nominated in the bond,” and that neither allegation nor proof is admissible against that right.
It appears, from the declaration in the mortgage, that the mortgagor confessed himself indebted to the mortgage company in the sum of only twenty-seven thousand five hundred dollars, and with this statement it closely coupled this admission, viz.:

‘ ‘ Which said indebtedness is for money loaned, and is evidenced by the following promissory notes bearing even date herewith.”

Then follows an enumeration of the notes — ten in number — as above related, aggregating forty-six thousand three hundred and fifty-four dollars and eighty cents in amount. That is face value.
And the act further declares that each of said notes “ bears interest at the rate of eight per cent, per annum after maturity, and ten percent, attorney’s fees,” etc.-
It seems to us, without further evidence than this, that the conclusion is irresistible, that the notes thus described carry an interest that was computed on the face of the notes and capitalized — thus exhibiting on the face of the hypothecation an indebtedness larger than that actually loaned, by eighteen thousand eight hundred and fifty-four dollars and eighty cents.
Not only is this true, but we are of opinion that the clause in the contract relied upon by the mortgage company, for the precipitation of the notes not due, carries a similar significance.
For it declares that “if said notes hereby secured, or any one of them, are not promptly paid at maturity, then all of the notes remaining unpaid at the time of such default, and all interest thereon, shall, at the option of the holder * * * be deemed due and payable. ’ ’
To what interest could that language apply, if not to that which had been capitalized and carried into the notes, in view of the fact that the notes, on their faces, bear no interest until after their maturity? And as the time of default is fixed in the contract at the date of maturity, there could not, in the nature of things, have been *1285 any interest made exigible thereby, because none is recoverable on the face of the notes until after maturity.
In the condition of our law and jurisprudence, it would serve no useful purpose to discuss the right of a mortgagor and borrower to contract for the payment of a greater rate of interest than eight per cent., provided it be capitalized and carried into the obligation.'
We are of the opinion that it will be sufficient to merely recapitulate the authorities on that question: R. C. C. 2924; Carruth vs. Carter, 26 An. 331; Martin vs. Sheriff, 37 An. 766; Bank vs. Reagan, 40 An. 17; American Homestead Company vs. Linigan, 46 An. 1119.
The only prohibition at present contained in the Code on the subject of usurious interest is that contained in the proviso to Art. 2924, viz.: “ provided such obligation shall not bear more than eight per cent, per annum after maturity until paid.”
This provision of law has been observed by the contracting parties in the contract before us. Finding the engagement of the mortgage debtor to pay to the creditor company a bonus for the loan to be a legal and valid contract, the plaintiffs are entitled to no relief against that which they have paid, in discharge of the three notes first maturing and a portion of the fourth. The investigation must, therefore, be limited to the question of reduction, if any, that is to be made on the remainder of the series of notes.
There being unpaid a portion of the fourth note, falling due on the 1st of January, 1893, and the whole of the deferred payments became due by virtue of the terms of the contract; hence the entire indebtedness of the deceased bears eight per cent, interest per annum from the date of his default. But, if the plaintiffs’ theory in respect to unearned interest be accepted and maintained, they are entitled to a reduction of ten per cent, per annum on the principal, the calculation to be made on the face of each of the notes remaining unpaid.
As observed supra, we think it sufficiently appears from the recitals of the act of mortgage that ten per cent, per annum was calculated upon each of the ten instalments of the debt, from the date of the execution of the notes and mortgage to the date of the final maturity of the last instalment, January 1, 1899. Our conclusion is that this reduction ought to be made, because the amount of the indebtedness of the deceased, as represented by his ten notes, was *1286 evidently predicated upon the.theory that he, as maker and borrower, should retain and use the capital during that period of time. But, having exercised the option of the covenant in the mortgage to precipitate the maturity of all the premature instalments of the debt, the mortgagee necessarily assumed the corresponding duty of remitting all the capitalized interest that was unearned at the time of the attempted exercise of that right by the seizure and sale of the mortgaged property on the 10th of December, 1894.
Were there any doubt as to the correctness of this proposition it would be completely dispelled by the statement made in the argument by one of the counsel for the mortgage company that his client was perfectly willing to remit all the unearned interest, although insisting that, on the face of the contract, plaintiffs are not legally entitled to this allowance.
This statement carries with it the admission that, as matter of fact, ten per cent, per annum had been computed and capitalized in the notes, leaving only the conclusion of law that is to be drawn therefrom by the court, and this we have already done.
II.
On the argument it was conceded that the horse was properly seized as an immovable by destination, it having been used and worked on the plantation, which was mortgaged; but plaintiffs’ counsel strenuously oppose the seizure of the corn and hay, on the ground that same had been severed from the soil, and at date of seizure had been gathered and stored, and were, therefore, movable in the sense of the Code.
While it is true, and this court has so decided frequently, that corn and hay, which has been raised on the mortgaged premises, for the service and use of the plantation, is immovable by, destination (C. P. 645; R. C. C. 468; Citizens Bank vs. Wiltz, 31 An. 244; Citizens Bank vs. Crooks, 21 An. 324; Weil vs. Lapeyre, 38 An. 303; Barrow vs. Lapene, 30 An. 310), yet we are not disposed to put upon the law a harsh or extreme interpretation, and it is our opinion that such would be the case if we should maintain as legal and valid the seizure of the crops in question in the month of December, a time at which all farming operations are suspended.
In this respect we are of opinion that the judgment of the court a qua should be amended, and that the corn and hay should be released from seizure.
*1287 III.
With regard to the alleged prematurity of the seizure under the order of seizure and sale, there is but little to be said, as it is settled by repeated adjudications of this court that this is a mere irregularity, on account of which an injunction will not be perpetuated, for the reason that no substantial benefit would be allowed, as a new writ would immediately lie under the same order of seizure. And the law does not favor a multiplicity of actions.
Injury, or at least a well-grounded apprehension of it, can alone justify a resort to this extraordinary remedy. Morgan vs. Whitesides, Curator, 14 La. 280; Hudson vs. Dangerfield, 2 La. 66; Dayton vs. Bank, 6 R. 20; Aillet vs. Henry, 2 An., 145; Woodward vs. Dashiell, 15 La. 184; McDonough vs. Fost, 1 Rob. 295; Nash vs. Johnson, 9 Rob. 8; Birch vs. Bates, 22 An. 198; State vs. Judge, 16 An. 392; Gorde vs. Buford, 14 An. 102; Succession of Allen vs. Couret, 25 An. 24; Chase vs. Gas Light Co., 45 An. 300; Howell vs. Butchers’ Union, 36 An. 63; Brown vs. New Orleans, 38 An. 517; Butchers’ Union and Slaughter House Co. vs. Howell, 37 An. 280.
This ground of injunction is not good.
IV.
The foregoing conclusions necessitate a modification of the decree of the court a qua in the two particulars named.
It is therefore ordered and decreed that the judgment appealed from be and the same is hereby modified and amended so as to allow in favor of the plaintiffs a reduction of ten per cent, per annum on each of the six notes last falling due, and the maturity of which was precipitated by reason of the debtor’s default in making payment of a portion of the fourth note of the series, to be calculated from the date of the order of seizure and sale to the 1st of January, 1899, the date of the maturity of the last note of the series, and further amended as to order that the corn and hay be released from seizure.
And it is finally ordered and decreed that as thus amended the judgment appeale.d from be affirmed at appellee’s cost.
Nicholls, O. J., absent.