**UNITY PLAN FINANCE CO., Inc., v. GREEN et al.** [*]

**No. 14530.**

Court of Appeal of Louisiana. Orleans.

May 22, 1933.

*Rehearing granted June 12, 1933.

Friedrichs, Connolly & Simoneaux, of New Orleans, for appellant.

John T. Charbonnet, of New Orleans, for appellees.

Prowell, McBride & Ray, Frymire & Ramos, Frank B. Twomey, and Joseph Lautenschlaeger, all of New Orleans (Sanders, Baldwin, Viosca & Haspel and Robert Weinstein, all of New Orleans, of counsel), amici curiæ.

JANVIER, Judge.

Plaintiff is a corporation engaged in the money lending business. It sues on three notes, each for an amount less than $300 and each partially unpaid. There were originally three comakers to each of the notes. One of them has died and it is conceded that the heirs of the deceased, who, together with the other two comakers, are made parties defendant, are liable as fully and to the same extent as the third comaker would have been had she lived.

Defendants contend that no recovery can be had on any of the notes for the following reasons: (1) That the petition discloses no right or cause of action; (2) that the contracts evidence an agreement to pay usurious interest; (3) that the contracts contain an agreement to compound interest; (4) that the contracts provide for interest in advance; (5) that the contracts are not such as are authorized under the small loan act of Louisiana and that, therefore, plaintiff is not entitled to charge interest in excess of 8 per cent. per year; (6) that it is not permitted, under the small loan act, to lend money at discount; (7) that plaintiff did not give defendants statements showing in distinct terms the amount of each loan, etc.

The defense numbered 1—that the petition does not disclose a cause of action—is based on the alleged absence from the petition of an allegation to the effect that plaintiff is a licensee under the so-called small loan law (Act No. 7 of the Extra Session of 1928 of the General Assembly of Louisiana) and the consequent illegality of an interest charge in excess of 8 per cent., which is the maximum rate permitted by the laws of Louisiana to all others than those licensed under the said act.

Defenses numbered 2 to 7, inclusive, are based on the contention that, even if plaintiff is a licensee under the act, it has violated the provisions thereof in the particulars set forth.

The exception of no cause of action must be overruled. It appears that it is admitted that plaintiff is a licensee under the small loan act and, therefore, although the

admission was made with a reservation of defendants' right under the exception, there can be no doubt of the fact that plaintiff is such a licensee, and, therefore, its failure to allege that fact could be readily cured by amendment. No good purpose could be served by remanding the matter for the making of a mere pro forma allegation.

The judge, a quo, held that the notes sued on are violative of the provisions of the.small loan law.

It is admitted that each of the notes was "discounted" at 10 per cent.; that is, that the amount given by plaintiff to the makers was in each case 10 per cent. less than the face of the note, and it is argued that this in itself renders the transaction illegal and violative of section 13 of the statute, which, in part, provides that where a licensee makes a loan under the act "interest shall not be payable in advance. * * * " It is also said that a further violation of the statute results from the fact that in each of the notes —which are payable in installments—failure to pay one installment creates the right in the holder to declare all future installments due. It is contended that the enforcement of this stipulation may result in an actual interest charge enormously in excess of that permitted because, since the total interest charged at the rate of 10 per cent. has been discounted from each note, if each note, by this so-called accelerated maturity process, is declared due months in advance of the maturity conventionally fixed, then the interest rate is increased in inverse proportion to the length of time the loan remains outstanding.

It is also said that the statute does not contemplate any other form of loan than one on a monthly basis and on which the monthly rate of 3½ per cent. must be charged.

That each of the notes provides for a further interest charge of 8 per cent. after maturity is also criticized because, so defendants assert, this stipulation amounts to the compounding of interest, since the note itself already contains the interest for the entire term of the loan, and it is argued that to permit a charge of 8 per cent. from maturity on the total amount of the note is to permit the charging of interest on interest, or, to express it differently, is to permit the compounding of interest, which is also prohibited by section 13 of the statute, from which it appears that "interest shall not be * * * compounded."

Finally, defendants direct their attack at that stipulation in each of the notes which provides that on each overdue installment there shall be paid 5 per cent. as liquidated damages, and they assert that this stipulation for the payment by the borrower of the liquidated damages sustained is in reality merely an additional interest charge in a disguised form and, when added to the 8

per cent. charged as interest on overdue installments, makes a total charge of 13 per cent. on such installments as are not paid when due. This last contention with reference to the 5 per cent. liquidated damages is not referred to in the agreed statement of fact, but, since we find the 5 per cent. provision in the notes themselves and since the matter is discussed in the briefs, we have given it consideration.

The most important question and the one upon which most of the other contentions rest is whether it is permitted to a licensee to make loans on a discount basis. In the statute there is no unambiguous expression of legislative intent as to this question. In section 13 it is provided that "interest shall not be payable in advance," and to the casual reader it might appear that by this prohibition the Legislature intended to frown upon the practice of discounting. But in other sections of the statute are found expressions which, by inference at least, permit the licensee to engage in the practice of discounting, and we reach the conclusion that, since to make interest payable in advance is prohibited, whereas, on the other hand, discount is by inference permitted, there must have been in the minds of the framers of the law a distinction between the two terms. Further investigation confirms this view and we find that prior to the enactment of the statute our Supreme Court had found that the words "interest in advance" do not necessarily mean "discount." In Walker v. Villavaso, 18 La. Ann. 712, it was said that a payment in advance of 12 per cent. of the face of certain notes was a usurious charge, but that, had the interest been included in the notes themselves, there would have been no objection thereto on the ground of usury; in other words, that a payment of interest in advance, if in excess of the lawful rate, constituted usury, but that to discount in excess of the lawful rate does not constitute usury. We cite this case merely to show that the Supreme Court recognized a distinction between the two terms.

Discussions of possible distinctions between the two terms "interest in advance" and "discount" are also found in Huntington v. Westerfield, 119 La. 619, 44 So. 317, and in Chadwick v. Menard, 104 La. 38, 28 So. 933.

In the last cited case the court said that there is little difference "in a business sense" between the two terms, but even in that case it was recognized that to pay interest in advance means to make a payment in cash, whereas to discount is to calculate interest and to include it in the note. Now, when the interest is calculated and added to the face of the note, it cannot be said that that interest is paid in advance. On the contrary, it is to be paid in the future.

The practice of discounting has, from time immemorial, been the subject of legislative

as well as of judicial consideration. The meaning of the word "discount" is well known. There can be no misunderstanding its significance and we cannot but believe that the legislators, had they intended to prohibit to licensees under the small loan act the practice of lending at discount, would have used the word "discount" and would not have been satisfied with any other word or term of similar, though not of identical, meaning. As we have mentioned and shall hereafter show, the statute does contain the word "discount" in other parts thereof, thus showing that the framers of the law were familiar with the word, and, in fact, as we have said, used it in such a way as to justify the inference that they intended that licensees might engage in that practice, provided, of course, they remained otherwise within the provisions of the statute.

We have referred to the fact that the statute inferentially permits discount. We had in mind paragraphs 1 and 3 of section 18. In paragraph 1 of this section we find "no person * * * except as authorized by this Act, shall directly or indirectly charge, contract for or receive any interest, discount, or consideration greater than eight (8) per centum per annum." The resulting inference is plain: That a person authorized by the act may discount at a rate greater than 8 per cent. In paragraph 3 also appears inferentially the right of a licensee to discount the note of a borrower, for in that paragraph it is provided that "no loan for which a greater rate of interest, discount, or charge than is allowed by this Act has been contracted for or received, wherever made, shall be enforced in this State."

To say that no loan shall be collected, if made at a greater rate of discount than is permitted by the act, is to indicate at least an intention to permit the collection of the loan if made at a rate of discount within the limit fixed.

We conclude that "loans at discount" are not prohibited by the act.

■ Nor do we find therein anything which prohibits a licensee from lending money repayable on the well-known installment plan, provided that the rate of interest does not exceed the maximum rate permitted, 42 per cent. per year. Of course, where a loan is made on the installment plan, the rate of interest stipulated for in the note is not the actual rate of interest earned by the lender or paid by the borrower because, since a portion of a loan is repayable at each installment period, the whole loan does not remain outstanding for the entire term, and, in order to determine just what is the actual interest rate, the average period for which the money loaned is outstanding must be taken into consideration, and it is not denied that, as in the case before us, where a loan is discounted at 10 per cent. and is repayable in twelve monthly installments, the average period for which each installment is outstanding is six months, and, therefore, since 10 per cent. is taken from the face of the note when the loan is made, the actual rate charged is not the 10 per cent. at which the note is discounted, but is 22⅔ per cent.

We do not think that it was the purpose of the framers of the act to limit transactions to monthly loans, or to in any way interfere with the convenient and well-established custom of permitting repayment in small installments. In section 14 appear certain requirements indicating that it was contemplated that loans might be thus repaid. For instance, a licensee is required to give a plain and complete receipt "for all payments made on account"; to permit repayment of the loan "in whole or in part prior to its maturity."

If licensees may be required to permit repayment in part, why cannot they stipulate for repayment in part when the original loan is made?

■■ From the fact that we see no objection to the discount method of making loans and that we believe it permissible to make such loans repayable in installments, there arises a most interesting question because of the stipulation for the acceleration of the maturity of the otherwise unmatured installments in the event of default in the payment of any one of them. If the loan is, to use figures, for $100, and is discounted at 10 per cent. and is payable in weekly installments, and if it contains a stipulation that failure to pay one installment matures all, and if the first installment is not paid, it is quite apparent that the immediate maturing of the entire loan will have the effect of increasing the rate of interest actually received to an enormous figure, because the $100 originally loaned and for which 10 per cent. discount was charged has been available to the borrower only for one week, and a charge of $10 for the use of $90 for one week amounts to nearly 600 per cent. for the year.

But that problem has been settled by our Supreme Court in Heirs of Williams v. Sheriff, 47 La. Ann. 1277, 17 So. 805, 808. There the court considered a loan made repayable in annual installments. The interest was calculated on each installment and was added to the amount of the note for that installment. The contract provided that failure to pay one should mature all. After a default in the payment of one of the earlier installments, it was sought to collect the entire amount of the outstanding notes and the defense was a charge of usury. The Supreme Court held that if the holder of such notes desires to take advantage of such an acceleration clause he necessarily must assume "the corresponding duty of remitting all the capitalized interest that was unearned at the time of the attempted exercise

of that right." On application for rehearing the court said: "We affirm the opinion heretofore pronounced, in so far as it is held that the maturing of unmatured notes, the maturity of which is precipitated by the default of the debtor, and the election of the creditor, does not carry with it indebtedness for the interest, although included in the note."

We understand this to mean that the holder of such a note is within his rights in taking advantage of the acceleration clause, but that, when he does so, he automatically writes out of the contract the interest which, by the default, would otherwise be payable, and he may claim only the interest which has been earned up to that time and which is based on a calculation using the interest rate stipulated for the amount of money actually loaned and the term for which the actual loan remains outstanding. This right in the borrower to limit the payment of interest to the term for which the cash advanced was actually outstanding is recognized in section 14 of the act, under which the principle announced in the Williams case is made a feature of the act itself. Under that section, where any part of a loan is repaid prior to the maturity conventionally fixed, the lender is entitled to "interest on such payment to the date thereof," which evidently means that, if the note has been discounted, the face of the note must be reduced so as to include only the amount actually advanced and the interest actually earned from the date of the loan to the date of the payment.

In the usual case of a loan repayable in installments there can be no doubt of the legality of an acceleration clause, and the only possible objection to it results from the possibility of the excess interest rate which would automatically come into existence where such a clause is inserted in the note which has been discounted. To permit the default of the borrower to have the effect of rendering an otherwise valid transaction usurious should not be countenanced.

In stipulating for the accelerated maturity in the event of default certainly it cannot be said that the parties had the intent of agreeing to usurious interest. The result that in the event the acceleration clause is availed of, usury will result, is purely accidental. Therefore, where, by the default of one party, the other exercises a right to which he is entitled and which, though entirely legal, nevertheless, as an accidental incident, brings into existence a claim which, if insisted upon, will taint the whole transaction with usury, the party entitled to the primary legal right (to accelerate the maturity), should not lose his entire right, but should be afforded the opportunity—as in the Williams Case—to waive the incidental and accidentally created claim which, if insisted upon,

would constitute usury. There was no usury from the inception of the contract.

In a case (Sharp v. Mortgage Security Corp. of America, 215 Cal. 287, 9 P.(2d) 819, 820) in which this thought is very interestingly discussed appears the following: "It is also elementary that the contract must in its inception require a payment of usury or it will not be held a violation of the statute and it may not be judged after some default of the borrower, which default alone authorizes penalties or forfeitures which, if exacted in the beginning, would have been a violation of the statute. Conservative Loan Co. v. Whittington, supra [120 Okl. 137, 250 P. 485]; Clement Mortgage Co. v. Johnston, 83 Okl. 153, 201 P. 247; M. Lowenstein & Sons v. British, etc., Co. (C. C. A.) 7 F.(2d) 51, 53; 27 R. C. L. 208; Low v. Sutherlin, Barry & Co. (C. C. A.) 35 F.(2d) 443."

The rule adopted in most jurisdictions and, as well expressed in the Sharp Case just above cited, is that: " * * * A debtor cannot bring his creditor to the penalties of the usury law by his voluntary default in respect to the obligation involved, where no violation of law is present at the inception of the contract."

We find no authority to the contrary except that from the state of Texas, which seems to stand alone on the question.

The rule to which we have referred is also set forth in Ruling Case Law, Vol. 27, verbum "Usury," § 35, page 234, as follows: "Under the principles laid down in the two preceding paragraphs, a provision in an agreement for the payment of money which accelerates the maturity of the debt on default in payment of either interest or an installment of principal does not constitute usury."

And, as authority for the same principle, we find the case of Spain v. Hamilton's Administrator, 1 Wall. 604, 605, 17 L. Ed. 619, from the syllabus of which we quote as follows: "Where the promise to pay a sum above legal interest depends upon a contingency, and not upon any happening of a certain event, the loan is not usurious."

Our conclusion is that the acceleration clause, even if availed of, does not violate the provisions of the act.

We next consider the stipulation under which the borrower agrees that, in the event of default, he will pay liquidated damages at the rate of 5 per cent. on all overdue amounts. Defendants assert that this provision, considered in connection with others which we shall hereafter discuss and under which 8 per cent. is to be paid on each installment after maturity, in reality places upon defendants the obligation of paying 13 per cent. after maturity. As we find the contention stated in their brief, defendants assert that: "The provision of these notes, requiring the makers

thereof to pay to the plaintiff, as liquidated damages, 5¢ for each and every dollar due after maturity, together with the 8% interest * * * is tantamount to providing that the makers of the notes shall pay approximately 13% interest per annum from maturity."

We agree with defendants that the charge made as "liquidated damages" is, in reality, merely an additional interest charge to apply from maturity because the only known damage which, under the law of Louisiana, can be sustained by the detention of money, is interest. In article 1935 of the Civil Code it is provided that: "The damages due for delay in the performance of an obligation to pay money are called interest. The creditor is entitled to these damages without proving any loss, and whatever loss he may have suffered he can recover no more."

That no other damage than interest is recognized in this state as the possible result of failure to pay money when due is stated in Griffin v. His Creditors, 6 Rob. 216.

The stipulation for liquidated damages at 5 per cent. is, therefore, in truth, a stipulation for interest at 5 per cent. from maturity.

We find in another clause an agreement to pay 8 per cent. after maturity on each installment and, therefore, adopting as sound the view of defendants, we shall treat the 5 per cent. charge as being merely in addition to the 8 per cent. charge, and shall next consider the effect of the statute on a charge of 13 per cent. on a discounted note after maturity.

That the contention which now confronts us may be clearly understood, we now restate the conclusions we have already announced on the questions heretofore discussed. We hold that a licensee under the small loan act may discount and that there is no objection to providing for repayment of loans in installments, and that the act does not prohibit the stipulation for the accelerated maturity of otherwise unmatured installments if default is made in the payment of a prior installment, provided that in no case may a licensee receive, whether as the result of discount, or acceleration, or in any other way, a return of more than 42 per cent. per annum on the actual cash loaned.

But now we find much interesting authority cited by defendants in an effort to convince us that to discount a note and to provide therein that interest thereon shall be charged from its maturity is to compound interest because the interest stipulated to run from maturity, in the event of nonpayment, is charged upon the whole note, which includes the discount, or capitalized interest.

In Compton v. Compton, 5 La. Ann. 619, is found a decision which has given us much concern, because it may be interpreted as expressing a view contrary to that which we have always entertained. We have not believed that it is to compound interest to provide that if a discounted note be not paid at maturity interest shall run thereon from maturity, and we have always entertained the view which we find well expressed in that well recognized authority.

Webb in his work on Usury, at page 134, under the subhead "Compounding of Interest": "It is plain that when an interest bearing obligation matures the interest is payable as positively as is the principal. The creditor is entitled to receive the interest as much as he is entitled to receive the principal. The debtor should no more retain the interest, which has been earned and is payable, without paying interest upon it, than he should retain the principal without any compensation for it. The propriety of past-due principal bearing interest is never doubted; for what reason, then, should the propriety of past-due interest bearing interest be doubted? A different view reflects upon the justice and propriety of interest and usury laws. A different view indicates a distinction between principal-money and interest-money. The one would thereby be considered fruitful, the other barren. The one would be the proper foundation of a contract, the other not. The profit of one would be legal, but gain based upon the other, illegal and unrighteous."

That there is nothing in the law of Louisiana which prohibits the stipulation for interest after the maturity of a discounted note is held in Scottish American Mortgage Co. v. Ogden, 49 La. Ann. 8, 21 So. 116, 118, and in Lichtenstein v. Lyons, 115 La. 1062, 40 So. 454.

To return to the case of Compton v. Compton, supra, we repeat that at a first reading the impression is created that there the court entertained the view presented now by defendants and it may be that even a most careful reading will leave the impression that that decision is authority for the view of defendants. We believe, however, that the distinction between that case and the other cases to which we have referred lies in the fact that there the notes given for the interest were separate from those given for the principal of the obligation, and that, therefore, when the notes given for the interest matured and interest commenced to run on them, it could fairly be said that the interest from maturity constituted interest on interest. Here separate notes were not given for the interest, but a single note was given for the whole debt and this single note was discounted. At any rate the later case of Scottish American Mortgage Co. v. Ogden, and the still later case of Lichtenstein v. Lyons cannot be distinguished in principle from the case which is now before us in so far as this point under discussion is concerned, and, in view of the fact that both the Scottish Ameri-

can Mortgage Company Case and the Lichtenstein Case were decided long after the Compton Case, we reach the conclusion that, if they cannot be distinguished, then we should follow the authority of the later cases.

If we are permitted to entertain independent views on the subject, and all courts, no matter how willing they may be to follow jurisprudence previously established by superior authority, cannot prevent independent thought on so interesting a question, we cannot refrain from expressing our preference for the views set forth in the later cases and our preference results from a consideration of these reasons: The decision in the Compton Case is based largely on an article which is found in our present Civil Code under the number 1939, which declares that: "Interest upon interest can not be recovered unless it be added to the principal, and by another contract made a new debt. No stipulation to that effect in the original contract is valid."

But we do not believe that the interest which has become capitalized and placed in a note as a part thereof and which is not payable until some future day is in reality any longer interest when that future day arrives. It has become a part of the principal and we can conceive of no reason why it should not earn interest as well as the other part of the discounted note. That this is the correct view is also stated in Tulane Law Review, Vol. 5, page 232, in which we find that: "* * * A discount by the payee at a rate exceeding the conventional rate was a valid transaction. This was true even though the note bore eight per cent. interest after maturity."

That the provisions of article 1939 do not apply to a discounted note is the only conclusion possible after a reading of article 2924 of the Civil Code, which plainly permits charging of interest (not in excess of the legal rate) after maturity of a discounted note. That article reads in part as follows: "The owner of any promissory note * * * shall have the right to collect the whole amount of such promissory note * * * notwithstanding such promissory note * * * may include a greater rate of interest or discount than eight per cent. per annum; provided such obligation shall not bear more than 8 per cent. per annum after maturity until paid."

We cite this article because we believe that it authorizes the conclusion that interest after maturity of a discounted note is not compound interest.

In Scottish American Mortgage Co. v. Ogden, supra, the court said: "It is true that the interest of 8 per cent. is on the interest. But the same would be true if the interest had been capitalized, and added to the principal debt, and 8 per cent. interest had been made payable on the notes after maturity. In both instances the interest is capitalized, which brings this case under the provisions of article 2924 of the Revised Civil Code. Martin v. Lake, Sheriff, 37 La. Ann. 763."

To hold otherwise would be to say that, where a note is discounted—and we have already said that it is contemplated by the small loan act that notes may be discounted —once maturity has arrived no further interest can be charged, and this would put a most unfair interpretation on the matter. It may be years before the debt is finally paid and we can see no reason why the holder of the note should not be permitted to earn a return on the face thereof from the time it matures until the time it is finally paid, so long, of course, as the return to which he is entitled under the stipulations of the note is not in excess of that permitted by law. The rate here fixed by the two stipulations, one for 8 per cent. and one for 5 per cent., is 13 per cent., and that is well within the limit fixed by the act. But if we be wrong in the last expressed view that article 2924 of the Civil Code is authority for the statement that to charge interest after maturity on a discounted note is not to charge compound interest, still we do not feel that the result would deprive plaintiff of the right to recover, because a careful reading of the act discloses that, though it is declared that interest shall not be compounded, no civil penalty is provided for violation of that provision.

Defendants contend for the annulment of the notes in their entirety, but, even if we felt that there has been charged compound interest, we could not grant this relief because it is only where a licensee has charged a greater rate of interest or discount than is provided for by the act that the obligation may not be enforced. The other violations do not effect the nullity of the obligation of the borrower. Therefore, even if compound interest is charged, the penalty is not nullity of the contract, unless, as a result of the compounding, the total interest rate exceeds the maximum rate permitted of 42 per cent. Here, as we have said, only 13 per cent. is charged after maturity. Even if that be added to the rate of 22⅔ per cent. before maturity—and we can conceive of no reason why this should be done—the total is only 35⅔ per cent., which is within the legal limit.

The contention that no collection can be made on the notes because no statement was given, as is required by section 14 of the act, must fail because, as we have already stated, no civil penalty is provided for the violation of that provision.

It is contended that the giving to each borrower of the check showing the net amount of the loan, when considered in connection with the face of the note, is tantamount to giving to each borrower a statement as required by that section of the act, but we need not consider whether this section has been

complied with because, as we have stated, even if it has not been, the penalty which we are asked to enforce is not authorized by the statute.

The 5 per cent. charge which, in the notes themselves, is stipulated for as liquidated damages, is not prayed for and we shall not, therefore, allow them. The attorney's fees in each note are fixed at 20 per cent. of the amount due, with a minimum fee in each case of $20, and, since attorney's fees are allowable under the decision of this court in Automobile Security Corp. v. Randazza, 17 La. App. 489, 135 So. 45, the proper allowances for such fees will be made.

As we have said, one of the original comakers, Rita Green, has died, and it has been stipulated that her heirs, "should any judgment be rendered against the maker and comakers on the notes sued on, * * * are personally solidarily liable therefor with the makers and co-makers."

Because of the fact that in the agreed statement of fact we are not given the exact dates on which installment payments were made, nor the exact amounts thereof, we are unable to calculate in detail the respective dates from which interest should run on the balances remaining after the payment of each respective installment, and we, therefore, render judgment in accordance with the facts as we find them in the stipulation.

It is therefore ordered, adjudged, and decreed that the judgment appealed from be and it is annulled, avoided, and reversed, and that there now be judgment in favor of the plaintiff and against William Green, Ernest Briscoe, Senora J. Green, wife of Ernest Briscoe, and Lolita A. Green, jointly, severally, and in solido, as follows:

On note No. A—1092 in the sum of $49, with interest at 10 per cent. on $112.50 from April 29, 1931, until December 30, 1931, and at 8 per cent. on $49 from December 30, 1931, until paid, and for attorney's fees in the sum of $15.

On note No. 1793 in the sum of $60, with interest at 10 per cent. on $90 from July 29, 1931, to December 30, 1931, and at 8 per cent. on $60 from December 30, 1931, until paid, and for attorney's fees in the sum of $15.

On note No. 2155 in the sum of $115, with interest at 10 per cent. on $135 from September 16, 1931, to December 30, 1931, and at 8 per cent. on $115 from December 30, 1931, until paid, and for attorney's fees at 20 per cent. on the total amount; and for all costs.

Reversed.

WESTERFIELD, Judge (dissenting).

The small loan act (No. 7 of the Extra Session of 1928) punishes the money lender who violates its provisions by fine and imprisonment and by forfeiture of the loan and interest. The civil penalty is imposed only when the interest charged exceeds 42 per cent. per annum. I believe that the acceleration clause, the so-called "discount," liquidated damages, and compound interest clauses, are each and all violative of the spirit and letter of the law and involve criminal responsibility, but only one, the acceleration of interest clause, is of importance here, because this is the only device which results in a charge of more than 42 per cent. interest, and, therefore, involves civil responsibility.

The case of Heirs of Williams v. Sheriff, 47 La. Ann. 1277, 17 So. 805, is not apposite for the reason that the act prohibits the contracting for, and not the collection of, more than 42 per cent. The Texas authorities, Shropshire v. Commerce Farm Credit Co., 120 Tex. 400, 30 S.W.(2d) 282, 39 S.W.(2d) 11, and Parks v. Lubbock, 92 Tex. 635, 51 S. W. 322, are very helpful because in Texas the common-law conception of interest has been modified by statute so as to conform to the civil law and is identical with our Codal definition, as pointed out in Parks v. Lubbock, supra. The reasoning of those cases is to the effect that the acceleration clause makes the note 'or loan usurious and is, to my mind, most convincing.

I respectfully dissent.