**WALTER E. HELLER & COMPANY**

v.

**MALL, INC., Wilson P. Abraham, Mitchell N. Ashy, and Delta Equipment & Construction Company, Inc.**

Civ. A. No. 2950.

United States District Court
E. D. Louisiana,
Baton Rouge Division.

April 27, 1967.

Charles Kohlmeyer, Jr., James A. Churchill, Lemle & Kelleher, New Orleans, La., for plaintiff.

E. Drew McKinnis, McGehee & McKinnis, Baton Rouge, La., for defendants.

WEST, District Judge:

On October 14, 1960, defendant, Mall, Inc., borrowed the sum of $425,000.00 from the plaintiff, Walter E. Heller & Company. In representation of this debt, Mall executed a note, dated that day, made payable to order of Walter E. Heller & Company, in the face amount of $527,000.00. There is no dispute about the fact that this note represented $425,-000.00 actually borrowed by Mall plus a finance charge or discount of $102,000.-00. The note was endorsed by the defendants Wilson P. Abraham, Mitchell N. Ashy, and by Arvil Allen Lindley, representing the Delta Equipment & Construction Company, Inc., and was further secured by a preferred ship mortgage on the vessel known as the MALL SPUD BARGE NO. 7, and by two instruments of guaranty executed by said endorsers. According to the terms of the note, it was payable in forty-seven (47) monthly

installments of $10,980.00 each and one installment of $10,940.00, commencing on November 14, 1960. The note further provided for interest at the rate of eight (8%) per cent per annum after due or declared date. It further stipulated that "in the event that this note or any installment thereof, or the interest thereon, is not paid when due, and according to its tenor, and is placed in the hands of an attorney at law for collection, or is sued on, ten per cent (10%) additional on the amount of both principal and interest as attorney's fees" would be due.

In June of 1961, the MALL SPUD BARGE NO. 7 was sold by Mall to Popich Marine Construction, Inc. who, at that time, assumed payment of the note in question. Neither Mall nor the endorsers on the note were released from liability thereon.

Between October 14, 1960, the date of execution of the note, and July 27, 1962, plaintiff had received payments on the note totalling $208,620.00.

On July 27, 1962, payments on the note being in arrears, plaintiff, by letter, invoked the acceleration clause contained therein and demanded that the entire unpaid balance of the note, together with interest and attorney's fees, be immediately paid. The note was not paid in full as demanded, but between July 27, 1962 and March 1, 1963, Popich made various payments on the note totaling $65,880.00. Subsequent to the date of acceleration Popich Marine Construction, Inc. went into receivership in a state court proceeding, and thereafter was adjudicated a bankrupt by the United States District Court in New Orleans, Louisiana. On June 28, 1963 plaintiff foreclosed on its preferred ship mortgage, and the net proceeds from the sale of the ship, i. e., the sum of $254,039.19 was, by order of the Court, paid by the Trustee in Bankruptcy to plaintiff to apply on the note. On March 23, 1964, plaintiff also received $11,598.55 from the Trustee, representing funds received from operation of the barge while it was under seizure. At that time there was a dispute between the Trustee and plaintiff as to whether or not plaintiff was liable for a portion of the administration costs of the state court receivership. In view of this dispute, plaintiff either filed a stipulation or posted a bond in the amount of $38,105.43, representing fifteen (15%) per cent of the total net proceeds of the sale, in order to secure the Trustee's claim against plaintiff for payment of a portion of the administration costs. Plaintiff still disputes the validity of this claim by the Trustee, and the matter is still pending in the foreclosure suit entitled Walter E. Heller & Company v. Mall Spud Barge No. 7, etc., et al., No. 5938 in Admiralty on the Docket of the United States District Court, Eastern District of Louisiana, New Orleans Division.

Thus, between the date of execution of the note, October 14, 1960, and the date of acceleration of the unpaid balance, July 27, 1962, plaintiff had received payments on the note in the total amount of $208,620.00. Between July 27, 1962 and March 23, 1964, plaintiff received payments totaling $331,517.74, including the payments of $254,039.19 and $11,598.55 received from the Trustee in Bankruptcy.

Plaintiff now brings this suit to recover what it alleges to be the unpaid balance on the note, together with attorney fees and late interest as provided for in the note. It is plaintiff's contention that the principal amount of the note in question is $527,000.00, even though $102,000.00 of that amount actually represents what is commonly referred to as six (6%) per cent add-on interest for the four year term of the note. Plaintiff, for obvious reasons, prefers to call this a "finance charge" rather than interest. Plaintiff argues that the total amount of this finance charge, or discount, is due and owing regardless of whether or not the note is accelerated by the holder as was done in this case. Plaintiff figures the unpaid balance on the note by taking the face amount of the note, $527,000.00 and subtracting payments of $208,620.00 received prior to acceleration date, leaving a balance due as of that

date of $318,380.00. It then proceeds to add interest at the rate of eight (8%) per cent on the various balances for each period between payment dates subsequent to the date of acceleration, and to subtract the various payments made subsequent to the date of acceleration and ends up with an unpaid balance of $68,500.53. To this amount it adds $36,233.36 attorney's fees and $424.22 late interest at the rate of eight (8%) per cent on late payments prior to the date of acceleration, making a total due as of date of trial, November 6, 1965, of $105,158.11.

Defendants resist this claim, alleging that as of March 5, 1964, when plaintiff received the $254,039.19 payment from the Trustee in Bankruptcy, the note, including principal, interest and attorney's fees was, in fact, overpaid. Defendants thus assert a counterclaim against plaintiff in the amount of $42,058.86, representing the amount of the alleged overpayment. This Court concludes that this note has indeed been overpaid, and that plaintiff is not entitled to any recovery from the defendants in this suit. Also, for reasons hereafter stated, the Court concludes that these defendants have no right to recover this overpayment from the plaintiff.

█ First of all, the plaintiff is in error when it urges that the total face amount of a discounted note is collectible even when the holder thereof accelerates payment of the entire unpaid balance of the note. This proposition was settled beyond question by the Courts of Louisiana as long ago as the year 1895. In Williams' Heirs v. Douglass, 47 La.Ann. 1277, 17 So. 805, the Louisiana Supreme Court said:

> "Our conclusion is that this reduction ought to be made, because the amount of the indebtedness of the deceased, as represented by his 10 notes, was evidently predicated upon the theory that he, as maker and borrower, should retain and use the capital during that period of time. But, having exercised the option of the covenant in the mortgage, to precipitate the maturity of all the premature installments of the

debt, the mortgagee necessarily assumed the corresponding duty of remitting all the capitalized interest that was unearned at the time of the attempted exercise of that right by the seizure and sale of the mortgaged property, * * *."

The Williams' Heirs decision has been consistently followed by the Courts of Louisiana. In commenting on the Williams' Heirs case, the Louisiana Court of Appeals, Fourth Circuit, in the case of Berger v. DeSalvo, 156 So.2d 323 (La. App., 4th Cir. 1963) said:

> "Our appreciation of the Williams' Heirs reasoning is that the attempted exercise of the right, the election by the holder to accelerate maturity, is the critical point at which unearned capitalized interest is remitted, because at that point the notes are matured by acceleration and the 8% interest from maturity stipulation becomes operative. The mere fact that, for whatever reason, the money loaned is not regained at that point, is not controlling; for the use of the money after the accelerated maturity the maker must pay the stipulated legal maximum interest of 8% per annum."

> " * * * Plaintiff's judicial admission that he elected to accelerate maturity as of November 6, 1959, coupled with his acceptance of additional consideration to refrain from collection procedures, makes it clear that he elected to treat the notes as matured since November 6, 1959. He therefore must remit the capitalized interest unearned as of that date; that is, he can collect only 6 months' interest out of the 24 months contracted for, or one fourth, or $750.00 of the $3,000.00 capitalized interest."

See also Clasen v. Excel Finance Causeway, Inc., 170 So.2d 924 (4th Cir. 1965), writ ref. 247 La. 619, 172 So.2d 702; Unity Plan Finance Co., Inc. v. Green, et al., 179 La. 1070, 155 So. 900 (1934); Consolidated Loans, Inc. v. Smith, et al., 190 So.2d 522 (La.App. 1st Cir. 1966), writ ref. 249 La. 753, 190 So.2d 913.

Thus it is clear that when the holder of a note, because of default by the maker, makes use of an acceleration clause contained therein to declare all unpaid payments immediately due and exigible, he must remit all capitalized, unearned interest or discount as of that date. This is not the case when the maker elects to pre-pay the note. In such a case, the maker is obligated to pay the full face amount of the note, including unearned interest or discount. Clasen v. Excel Finance Causeway, Inc., supra. Therefore, in this case, since it was the holder who accelerated the payment date, the unearned portion of the $102,-000.00 discount as of July 27, 1962, the date of acceleration, must be remitted, and from that date forward, the note merely bears interest at the rate of eight (8%) per cent per annum on the unpaid balance from due date until paid. But there is also a dispute as to how the earned and unearned portions of the discount are to be calculated. While plaintiff on the one hand insists that the $102,000.00 is not interest but is instead a "finance charge" still it insists on the other hand that the earned portion of this finance charge be calculated by using the so-called rule of 78ths. This is a method commonly used in financial circles to determine what portion of each of several equal monthly payments is to be applied first to interest on the unpaid balance and then to principal. It is, in effect, a method of figuring interest each month on a declining principal balance. While this method is acceptable where interest payments are being calculated, it is not acceptable where a note bears no interest but instead has a discount or finance charge tacked on to the principal of the note. Plaintiff simply cannot contend that the $102,000.00 is interest and expect to collect it in its entirety as such because, as of the date it claims it was due, July 27, 1962, such an amount, if interest, would clearly be usurious. Thus the rules pertaining to the calculation of interest do not apply. When a discounted note is accelerated by the holder, the entire discount or finance charge must be prorated evenly over the entire term of the note, and only that portion of the pro-rata discount earned as of the date of acceleration is collectible. This was the method employed by the Court in Berger v. DeSalvo, supra, and in Consolidated Loans v. Smith, supra. It is the method of calculation by which this Court is bound. The entire term of the note in question was four years, or 1460 days. As of the date of acceleration, 648 days had elapsed. Thus, the discount, or finance charge was being earned at the rate of $69.863 per day. During the 648 days preceding acceleration the note had earned $45,271.22 of the $102,000.00 discount or finance charge. The remainder of it was remitted on July 27, 1962. Thereafter the note bore eight (8%) per cent interest per annum on the unpaid balance. Counsel for plaintiff concedes that if attorney's fees are due they are due only as of March 1, 1963, the date on which the note was actually placed in his hands for collection. Defendant contends that no attorney's fees are due because of the fact that the note has actually been overpaid. But the attorney's fees attached and were collectible as of the date when the note was placed in his hands for collection. Lagrade Finance Company v. Vinet, 346 F.2d 846 (CA 5, 1965); Snider v. Bozarth, 180 So.2d 800 (La.App. 4th Cir., 1965). That date was March 1, 1963. As of that date, as will be seen by the calculations which follow, there was a substantial unpaid and past due balance on the note. But even after this fee is added to the note as of March 1, 1963, and eight (8%) per cent interest added on both the balance of the note and on the attorney's fees, the note has still been overpaid. The amount of the loan was $425,000.00. The earned discount for 648 days was $45,271.22. Thus it would have taken $470,271.22, less payments made prior to acceleration to have paid the note in full on July 27, 1962, the date of acceleration. No attorney's fees had attached at that time as it was not until March 1, 1963 that the note was placed in the hands of an attorney for collection. Prior to the date of accelera-

tion, payments in the sum of $208,620.00 had been received by plaintiff. This left a balance due on the note as of the date of acceleration of $261,651.22 plus $424.22 representing interest at eight (8%) per cent due on late payments made prior to the acceleration date of July 27, 1962, or the total sum of $262,075.44. From this time on, this balance, and subsequent balances remaining after payments were made, bore interest at the rate of eight (8%) per cent per annum. In figuring this interest, the Court here, as in the Berger case, uses a 365 day year. The following calculations show the interest earned and the payments made after the date of acceleration, resulting in an overpayment on this note.

| | |
|---|---:|
| BALANCE DUE ON ACCELERATION DATE — 7/27/62 | $262,075.44 |
| ADD 8% Interest for 7 days at $57.44/day | 402.08 |
| | 262,477.52 |
| LESS Payment made on 8/3/62 | 21,960.00 |
| | 240,517.52 |
| ADD 8% Interest for 94 days at $52.44/day | 4,929.36 |
| | 245,446.88 |
| LESS Payment made on 11/5/62 | 10,980.00 |
| | 234,466.88 |
| ADD 8% Interest for 35 days at $51.39/day | 1,798.65 |
| | 236,265.53 |
| LESS Payment made on 12/10/62 | 5,009.25 |
| | 231,256.28 |
| ADD 8% Interest for 21 days at $50.69/day | 1,064.49 |
| | 232,320.77 |
| LESS Payment made on 12/31/62 | 5,970.75 |
| | 226,350.02 |
| ADD 8% Interest for 21 days at $49.61/day | 1,041.81 |
| | 227,391.83 |
| LESS Payment made on 1/21/63 | 10,980.00 |
| | 216,411.83 |
| ADD 8% Interest for 39 days at $47.43/day | 1,849.77 |
| BALANCE WHEN PLACED IN HANDS OF ATTORNEY | 218,261.60 |
| ADD 10% Attorney's Fees | 21,826.16 |
| | 240,087.76 |
| LESS Payment of 3/1/63 | 10,980.00 |
| | 229,107.76 |
| ADD 8% Interest for 370 days at $50.22/day | 18,581.40 |
| | 247,689.16 |
| LESS Payment made on 3/5/64 | 254,039.19 |
| OVERPAID as of March 5, 1964 | ( 6,350.03) |
| ADD Payment made on 3/23/64 | 11,598.55 |
| OVERPAID as of March 23, 1964 | ( 17,948.58) |

The present suit was filed on March 10, 1964.

■ Thus it is that the note in question has been overpaid by an amount of $17,948.58, and plaintiff is obviously not entitled to recover anything further from these defendants. But plaintiff insists that because it had to post a surety bond in order to receive $38,105.43 of the $254,039.19 paid to it by the Trustee in Bankruptcy on March 5, 1964, it, in effect, did not receive the $38,105.43 as a payment on the note. This argument is, of course, untenable. The fact remains that the $38,105.43 was paid in cash to the plaintiff and the plaintiff has had use of that money since March 5, 1964 just as it has had use of all other moneys paid on account of this note. It may be that plaintiff could, under certain circumstances, be entitled to recover the amount of premiums paid for the surety bond which it posted, but since no claim for such premiums was made here, and since there is nothing in the record to show the amount of such premiums, no such award can be made at this time. Also, it seems quite likely that the overpayment already received by plaintiff would more than offset any such claim for return of bond premiums paid.

As of now, plaintiff has been overpaid on the note by the sum of $17,948.58. Inasmuch as there is no showing in this record that this overpayment was made by defendants herein, their counterclaim must, of course, be rejected. Should Popich Marine Construction, Inc., through its Trustee in Bankruptcy, seek to recover the overpayment, then, of course, plaintiff would have the right to assert whatever claims it might have for bond premiums or administration costs as an offset against the overpayment. Also, if and when plaintiff can show that it has not, in fact, recovered its costs, such as bond premiums or costs assessed as a result of the receivership proceedings, it would, of course, at that time, have a claim against these defendants for recovery thereof. But no such showing has been made in this suit.

■ Plaintiff contends that in addition to the attorney's fees provided for by the terms of the note sued upon he is entitled to recover an additional fee resulting from the two guaranty agreements executed by the endorsers on the note. Defendants Wilson P. Abraham and Mitchell N. Ashy executed one of the agreements and defendant Delta Equipment & Construction Co., Inc. executed the other one. By these agreements, the defendants Abraham, Ashy and Delta Equipment & Construction Co., Inc. guaranteed prompt payment to the plaintiff at maturity of any indebtedness owed by Mall, Inc. to plaintiff, and they further agreed "to reimburse you and your assigns for all expenses, collection charges, court costs, and attorney fees incurred in endeavoring to collect or enforce any of the foregoing against the Debtor * * *." Plaintiff argues that the attorney's fees provided for in the note merely covers his fee in connection with the foreclosure suit, and that he is now entitled to an additional fee of "$3500 to $4000" for legal services rendered in connection with this present suit. This reasoning is not sound. The attorney's fees provided for in the note were surely intended to cover all legal services rendered in connection with the collection of the note for which the maker or endorsers thereof would be liable. Pursuant to the terms of the note, plaintiff has been awarded attorney's fees in the amount of $21,826.16. Certainly this fee is adequate, and in all probability is larger than it would be if figured by the Court on a quantum meruit basis. But be that as it may, it is the opinion of this Court that the two guaranty agreements merely guaranteed payment of what Mall, Inc. might owe under the note in question. Under the note, Mall, Inc., as maker of the note, owed an attorney's fee as of March 1, 1963, of $21,826.16. That fee has been paid and there is consequently no additional fee owed by the guarantors.

■ This brings us to the defendants' counterclaim. It is admitted that

the payments made on the note which resulted in an overpayment were not made by the defendants in this suit. They were made by Popich Marine Construction, Inc. But on May 9, 1966, an agreement was entered into between the Trustee in Bankruptcy for Popich and Mall, Inc., whereby Popich, inter alia, transferred and assigned to Mall, Inc. any and all claims which it might have against plaintiff arising out of an overpayment of the note. This agreement was approved by the Referee in Bankruptcy and Mall was thereby authorized, in its own name, to pursue this claim for recovery of the alleged overpayment.

But, of course, by this assignment Mall could not acquire any greater rights than those possessed by its assignor, Popich. When the foreclosure suit was filed by plaintiff, Walter E. Heller & Company, the named defendants were MALL SPUD BARGE NO. 7, her engines, tackle, furniture, apparel, etc.; Nick P. Popich, Receiver, Popich Marine Construction, Inc.; and Mall, Inc. The defendants in the present case, Wilson P. Abraham, Mitchell N. Ashy, and Delta Equipment & Construction, Inc., were not parties to that foreclosure suit. While Mall, Inc. was a named defendant in that suit, a review of the record in that case reveals the fact that Mall, Inc. was apparently never served, nor did it ever appear and answer or otherwise plead. Thus the judgment rendered therein could not be res judicata, as is now contended by plaintiff, as against any of the defendants in the present suit. This is important because of the determination made by the Court in the foreclosure suit as to the balance due on the note. The findings of the Court in that case vary significantly from the findings of the Court in this case.

In the foreclosure suit, on December 2, 1963, the Court entered a Decree in which it stated, in part:

"ORDERED, ADJUDGED AND DECREED that the mortgage executed on October 14, 1960, by Mall, Inc. in favor of Walter E. Heller & Company to secure the payment of the promissory note therein described in the principal sum of $527,000.00, on which there is a principal balance due of $252,500.00, be and the same is hereby recognized as a valid first preferred ship mortgage * * *."

The Decree further provided:

"ORDERED, ADJUDGED AND DECREED that Walter E. Heller & Company have and recover against MALL SPUD BARGE NO. 7, her engines, tackle, apparel, furniture, etc., and without limiting the generality of the foregoing, all equipment hereinabove described, the total sum of TWO HUNDRED FIFTY-TWO THOUSAND, FIVE HUNDRED AND NO/100 DOLLARS ($252,500.00), with interest thereon at Eight per cent per annum from March 1, 1963 until paid, * *."

Thus, the plaintiff now argues, the Court in that proceeding determined that as of March 1, 1963 there was a principal balance due on the note of $252,500.00, and that it rendered judgment accordingly. This judgment, plaintiff argues, is now res judicata as to Mall, Inc., the assignee of Popich's right to claim refund of an overpayment, and if Mall is bound by that judgment, it is precluded from now contending that an overpayment was made on the note.

If this Court is bound by the conclusion in the foreclosure suit that as of March 1, 1963, there was an unpaid balance on the note of $252,500.00 before adding attorney's fees, then of course this Court would be in error in concluding that the note has been overpaid. According to this Court's findings, the balance due on March 1, 1963, before adding attorney's fees was only $218,261.60. A review of the record in the foreclosure proceedings does not indicate that the method of determining the balance due on the note was at issue. Furthermore, the parties to the two suits are not the same. Thus the elements required for the judgment in the foreclosure suit to be res judicata in the pres-

ent suit are not present. While Mall, Inc. was named as a party defendant, it was never served nor did it ever appear. Consequently there were no contradictory proceedings had against Mall, Inc. as to the balance due by it on the note. Popich, through its Trustee in Bankruptcy, was a party to the foreclosure suit and it apparently acquiesced in the judgment which declared that there was $252,500.00 due on the note as of March 1, 1963. As a matter of fact, before that Decree was entered, the attorney for the Trustee in Bankruptcy for Popich Marine Construction, Inc. endorsed on the Decree "No objection to form of decree." Thus it would seem that the judgment might well be binding upon Popich and its Trustee in Bankruptcy. But it certainly cannot be binding upon any of the parties to the present suit who were not parties to the prior litigation. It necessarily follows that this Court is of course not bound by the finding of the Court in the foreclosure suit when it comes to determining whether or not Mall, Inc., Abraham, Ashy, or Delta Equipment & Construction Co., Inc. are presently indebted to the plaintiff. If it were Popich instead of Mall who was now suing plaintiff for refund of an alleged overpayment, it seems quite obvious that it could not prevail because the prior judgment would be res judicata as to it. The only right that Mall, Inc. can possibly have to claim the refund is whatever right it acquired by virtue of its assignment from Popich, because Mall admittedly did not make the payments resulting in the overpayment. But Mall cannot acquire by assignment any greater rights than those possessed by Popich. And since Popich would be estopped to claim a refund because of the prior judgment against it, Mall, Inc. could not acquire any such right by its assignment of "any and all claims which it (Popich) may have against Walter E. Heller & Company arising out of overpayment" of the note. Thus, the counterclaim of Mall, Inc. for refund of the amount of the overpayment fails to state a claim upon which relief can be granted by this Court.

For these reasons, it is the opinion of this Court that the defendants herein are not indebted unto the plaintiff for any sum or sums whatsoever and consequently, judgment will be rendered dismissing plaintiff's suit at its cost. Judgment will also be rendered dismissing the counterclaim filed by Mall, Inc.