Statement.
MONROE, J.
Plaintiffs allege that they are holders and owners of two notes made by the defendant — the one for $6,457.64, dated April 19, 1898, payable March 1, 1899; the other for $2,000, dated August 3, 1898, paya *540 hie February 1, 1899 — each of them bearing interest at the rate of 8 per cent, per annum from maturity, being secured by mortgage, and calling for 10 per cent, attorney’s fees in case of suit. They allege that the note of April 19, 1898, was given for a debt due by the defendant to A. Kaplan; that the note of August 3, 1898, was given for a debt due to H. Lichtenstein & Son; and that plaintiffs acquired them both “in due course” and fox-value — the fact being, however, that both notes were given to H. Lichtenstein & Son in connection with contracts for advances, and that plaintiffs acquired them either as members of that firm, or as heirs of the senior partner, or in both capacities. Plaintiffs allege that there remains due to them, on account of said notes, the principal sum of $3,919.27, with interest thereon at the rate of 8 per cent, per annum, from June 4, 1902, until paid, together with 10 per cent, upon the aggregate of principal and interest, as attorney’s fees, and, “reserving their mortgage rights,” they pray for judgment accordingly.
The defendant for answer alleges in substance that the notes were given to secure advances to be made for the making of his rice crop in 1898, and that by payments made by him from time to time they have been 'extinguished. He pleads payment, novation, and usury, and prays for judgment.
It appears from the evidence that H. Lichtenstein & Son and the defendant had been engaged in business together, as factors and planter, respectively, for several years, and that, continuing in the same relation, defendant,- upon April 19, 1898, gave a note of that date, and to secure its payment pledged a like note (being the note here sued on), secured by mortgage and by pledge of certain approved claims against the parish fox-services as sheriff, as also of his rice crop, then growing, all in accordance with a written contract of even date with the note, reading in part as follows, to wit:
“In considex-ation of a line of advances made by H. Lichtenstein & Son, as evidenced by my note * * * for $6,457.64, which note is to be discounted by H. Lichtenstein & Son, and the proceeds, amounting to $6,000, placed to my credit, I agree to ship H. Lichtenstein & Son all the rice I make, ship, and control during the year 1898, the said shipments of rice to be not less than 9,680 sacks of rough rice, between this date and the maturity of this note; said H. Lichtenstein & Son to charge a commission of 2% per cent, on sales for selling said rice, as well as the other usual charges, and, in the event that ’ my shipments should fall short of the above stipulated number of sacks, I agree to pay said H. Lichtenstein & Son 10 cents per sack for each sack short. * * * An interest account shall be kept of my open account * * * at the rate of 8 per cent, per annum pro and eon. The said H. Lichtenstein & Son are authorized to apply the proceed of sales of said shipments of rice and cotton, and remittances I may make them, and other credits, either to the payment of the aforesaid note, my open account, or any other indebtedness which I may owe the said H. Lichtenstein & Son, as they may elect. Such imputation to be made at any time and in any manner they see fit. As security for the aforesaid note, * * * as well as for any other indebtedness of any kind, on open account or otherwise, to the amount of $10,000, remaining due after the close of season, and in order to secure the above amount and the faithful performance of this contract, I have pledged the following securities: [Here follows an enumeration of the securities as heretofore mentioned.] It is agreed that, should I desire to have my rice milled by the People’s Independent Rice Mill * * * and the said H. Lichtenstein & Son consent thereto, on such rice, so milled, I am to pay said H. Lichtenstein & Son a commission of ten cents per sack,” etc.
On August 3, 1898, defendant gave the note of $2,000, in connection with a similar contract, in which it was agreed that the proceeds of the discount should be $1,914.90; the note so given being secured by mortgage and by pledge of approved claims and of the crop, and the defendant agreeing to ship 2,500 sacks of rice or pay for shortage as in the previous contract. And on November 1, 1898, he gave a note for $3,075.10, the proceeds of the discount of which it was agreed should be $3,000, and bound himself to ship 2,000 sacks of rice; said note being unsecured *541 save by the crop lien, but the contract in accordance with which it was given being otherwise similar to those already made.
For the purposes of the trial, the plaintiff, in compliance with the defendant’s demand, produced what purport to be statements of his account taken from their books, and the defendant offered certain statements which had been furnished to him by the plaintiffs, or by Lichtenstein & Son, prior to the institution of the suit. These different statements are not altogether reconcilable with each other, nor do they altogether sustain the theory upon which the suit has been brought; it being now admitted that the note for $2,000, upon which plaintiffs in part predicate their demand, has been pa,id, and it being shown that defendant is entitled to certain credit which has not been accorded him.
The first transaction between the parties —that is to say, between the firm of H. Lichtenstein & Son and the defendant — was the discount by the firm of defendant’s note for $700, upon August 15, 1894; the proceeds of the note having been placed to the credit of defendant’s account and drawn out by him, the note having been charged at maturity to the same account, and the account having been settled by defendant’s checks to the satisfaction of Lichtenstein & Son (though, as we understand the figures, there was an error of $45 to their prejudice in the settlement). The next transaction, so far as the record shows, was on June 13, 1896, when the parties entered into a contract similar to those already mentioned, pursuant to which Lichtenstein & Son discounted defendant’s note for $1,778.55, placed the proceeds to the credit of his account, debited his account with his drafts against these proceeds, and at its maturity with the amount of the note; and pursuing a like course with reference to a note of $333.10, discounted July 2, 1896, further debited his account with $250 for shortage in shipments of rice, and credited it with payments made, amounting to $1,216.-44, leaving, as the balance due by him on January 28, 1897, the sum of $1,645.21.
On February 12, 1897, Lichtenstein & Son discounted defendant’s note for $5,467.73 and placed the proceeds, amounting to $5,000, to-the credit of his account. On February 19th following defendant drew upon the amount so credited for $1,645.21 in payment of the' balance due by him, and subsequently drew other drafts, exhausting the amount to his credit and (upon May 10, 1897) leaving unpaid the note for $5,467.73.
In June, 1897, there was a transaction involving $800, which was settled in July, save as to a matter of $6.75 in the way of interest, leaving the note of $5,467.73 still unpaid. On October 18, 1897, Lichtenstein & Son discounted defendant’s note of $1,199.15, and on April 19, 1898, the note so discounted and the note for $5,467.73 (both notes having fallen due March 4, 1898) were outstanding and unpaid, and they, together with the interest due on them, as also an item of $870, charged against the defendant for shortage in shipments of rice, appear, from plaintiffs’ statement No. 5 (showing the condition of the account on April 24, 1898) to have been paid (less a balance of $1) in part by imputing thereto the proceeds of the note of $6,457.64 here sued on and in part by remittances. Plaintiffs’ next statement covers the period between August 3, 1898, and June 12, 1899, credits defendant with the proceeds of the notes of August 3 and November 1, 1898 (for $2,000 and $3,075.10, respectively) and with various remittances, charges him with various drafts paid for liis account, with the note for $2,000 (which had fallen due February 4, 1899), with $1,418 for shortage in shipments of rice, and shows a balance in his favor, on open account, of $3,702.66, with the notes for- $6,457.64 and $3,075.10 outstanding and unpaid.
*542 The next statement, produced by plaintiffs, reads as follows:

■The last statement produced by the plaintiffs is dated November 5, 1903, and reads:

Turning from the statements produced by the plaintiffs to those produced by the defendant as having been furnished him by Lichtenstein & Son prior to the institution of this suit, we find a statement marked' “3-1”, reading as follows:

On March 5, 1901, another statement was rendered to defendant marked “3-2”, as follows:
Additional.
1900
May 10. To bal. due on notes and int. as ’ shown by statement rendered this date........................'• $4,848 33
Credit.
1901 Feb. 25; Bal. of check, People's Ind. Rice , Mill .............................. 1,383 39
Bal. due (Int. and Com. pd. to Feb. 25/01)..................... 3,464 94
1901 Mch. 5. To int. due on bal. $3,464.94 to this date .............................. 6 93
Total due us by E. W. Lyons to date....................... $3,471 87.
E. & O. E. Mcb. 5, 1901. [Signed] H. Lichtenstein & Son.
On October 15, 1901, Lichtenstein & Son rendered another statement, charging an additional sum of $173.25 as interest on the balance shown to be due by the previous account, and bringing that balance up to $3,645.12. On February 15, 1902,' they ren *543 dered another statement, charging $100.44 as interest on the balance previously shown, thus bringing that balance up to $3,745.56, charging a commission of 2y2 per cent, on that amount (say $93.64), and showing as the total amount due them the sum of $3,839.20. And on March 27, 1902, another statement was rendered charging 41 days interest, or $33.21, on the balance thus shown, and bringing the same up to $3,872.41.
The defendant testifies concerning these statements as follows:
“Q. You say that these documents were furnished you upon your request for a statement? A. Yes, sir. Q. Are you an accountant, Mr. Lyons? A. No, sir. Q. Have you ever been able to understand your account with these people? A. No, sir. I never could, and I don’t understand it yet. * *
Cross-examination:
“Q. You have spoken of some statements which have been introduced in evidence ■ and marked ‘3-1’ to ‘3-6’ on the note of evidence. Are these the only statements you have ever received from the firm of H. Lichtenstein & Son? A. No, sir. I have several. I wrote to them several times, asking them to send me some that I could understand. Q. Then those are not the only ones? A. They are the first ones.”
It will be observed that, in the account of March 5, 1901, there appears the following credit, to wit:
“Eeby. 25, Bal. of check, People’s Ind. Rice Mill. $1,383.39.”
Referring to the statement (last preceding those offered by" the defendant) produced by plaintiffs, it will be found that this item appears as a credit of $1,825.93, and, turning to the evidence in the record, we find that the defendant, upon the date given, actually paid to the People’s Rice Mill, the authorized agent of Lichtenstein & Son, or was charged by it for account that firm, the sum of $2,033.43. No attempt is made to explain the discrepancy between the amount as credited on the statement furnished to the defendant and on that produced by the plaintiffs, and plaintiffs’ attempt to show that the credit of $1,825.93 is correct is unsuccessful, though it seems that was the amount for which their agent accounted to them.
The judge a quo rejected the plaintiffs’ charges for shortage in shipments of rice, and, holding that they had the right to impute the payments as they pleased, and, exercising that right, had imputed them to the notes of $2,000 and $3,075.10, thereby extinguishing those notes and leaving a balance of $1,352.11 due upon the note of $6,457.64, he gave judgment for that amount, with interest from November 5, 1903, and attorney’s fees. The plaintiffs have appealed, and the defendant has answered the appeal, praying that the entire demand be rejected, or, at all events, that the judgment be not increased. In this court, the plaintiffs have pleaded the prescription of 12 months against the charge of usury.
Opinion.
The plaintiffs pray judgment for $3,919.27, with interest and attorney’s fees, as the balance alleged by them to be due upon two notes, for $6,457.64 and $2,000, respectively. In the course of the trial it was proved, and it is admitted, that the note for $2,000 had been paid in full before the institution of this suit, and it is argued by defendant’s counsel that the plaintiffs cannot now be heard to assert that the balance claimed by them is due exclusively upon the other note.
We are, however, of the opinion that the plaintiffs are entitled to recover any balance which the evidence, admitted without objection, may show to be dute them on either note; the evidence under such circumstances serving to amend the pleadings.
Considering, then, in a general way, whether the evidence can be said to show that the amount claimed (and, if not the whole, what part of it) is due as the unpaid balance of the note for $6,457.64, it will be seen that in *544 the .statement “3-1” (which the defendant testifies was among the first furnished him by Lichtenstein & Son, and which contains the last entry made in the account between them, save charges for interest) the two notes, for $6,457.64 and $3,075.10, respectively, together with accrued interest, to May 10, 1900, aggregating $10,459.56, are charged to the defendant, subject to a credit, as against said aggregate amount, of $5,611.23, which credit is made up of a balance of $3,702.66, which stood to the credit of the defendant in open account, $1,300 cash paid July 4, 1899, two drafts of $125.85 and $121.21, respectively, and $360.85 of interest. It is clear, therefore, that according to the account so rendered Lichtenstein & Son, exercising the privilege conferred by their contract, had elected to impute, the payments made by the defendant to both notes, and this imputation is confirmed by the accounts subsequently rendered. Thus the account to which we have referred, showing a balance due upon the two notes, together, of $4,848.33, is followed by an account, dated March 5, 1901, which reads:
1900
May 10. To balance due on note and int.
as shown by statement rendered
this date.........................$4,848 33
Credit
1901
Feby. 25. Bal. of ch. People’s Ind. Rice
Mill..........................*..... 1,383 39
Bal. due us (Int. & com. pd. to Feb. 25/01)................. $3,464 94
1901
Mch. 5. To int. due on Bal. $3,464.94 to
this date......................... 6 93
Total due us by E. W. Lyons to date........................ $3,471 87
This account is followed by another, dated October 15, 1901, which merely adds interest to that date to the balance as thus ascertained. The account of October 15, 1901, is followed by another of February 15, 1902, which starts with the balance as shown by the previous account and adds interest to the date last mentioned, together with a commission of 2% per cent., amounting to $93.64, and this account is followed by one of March 27, 1902, which starts with the balance as shown by the account of February 15th and adds interest for the time which elapsed between those dates.
Now, it is true that, from the statement produced by the plaintiffs of June 4, 1902, it appears that the amounts which (according to the statements thus furnished to the defendant) had been imputed to the payment of the sum total of both notes are imputed first to the payment of the note of $3,075.10, and it is only after the extinguishment of that note that anything whatever is imputed to the other one. And the same theory of imputation is disclosed in the statement, also produced by plaintiffs, of date November 5, 1903.
We are, however, unable to understand how books which show one thing from May 10, 1900, to March 27, 1902, can suddenly be made to show another on June 4, 1902; nor is it clear to us, even if such a feat could be accomplished, that the defendant would be affected by it. He had, by the terms of his contracts, accorded to plaintiffs the right to impute payments to any debt due by him, and they had exercised that right, and had informed him that they had imputed all payments made by him to the sum total, without distinction, of his two notes, and the contracts under which they took that action cannot be interpreted to mean that they were at liberty, thereafter and without his consent, to make a different imputation.
Ordinarily, whether the payment be imputed at the instance of the debtor or the creditor, it takes place at the time of payment (Bloodworth v. Jacobs, 2 La. Ann. 24; Adams v. Bank of La., 3 La. Ann. 351); and though, as between the litigants now before the court, it was stipulated that the plaintiffs (or those under whom they claim) should make the imputations when they pleased, *545 it nevertheless remains that, having exercised their rights, they exhausted it. “An imputation by a creditor, ratified by the debt- or, takes effect from its date.” Metoyer v. Trezzini, 6 Rob. 124. And, it may be added, such action and ratification, being equivalent to an agreement upon the subject, satisfies and takes the place of any agreement previously existing. We conclude, therefore, that the payments with which the defendant is entitled to be credited should be imputed, proportionately,-to the two notes of $6,457.64 and $3,075.10, respectively, and that the plaintiff can recover, in this suit, only the balance which may be due upon the note first mentioned after such imputation has been made.
The defendant objects that the charges for shortage in the shipments of rice, being added to the interest charged for the money advanced to him, make the contracts usurious. We do not find this to be the case. The mere lending of their money at 8 per cent, imposed upon Lichtenstein & Son no obligation to sell the defendant’s rice, and both he and they were at liberty to make any lawful contract upon that subject that they thought advisable. The defendant chose to agree that he would ship a certain number of sacks and pay a certain commission for the sale of the same, or, in the event of his failing to ship, would pay 10 cents for each sack with respect to which he might be in default. The agreement may have been unwise; but the fact that he at the same time borrowed money at the highest conventional rate of interest did not, as we think, render it illegal.
It is true that in Harrod et al. v. Constant, 5 Mart. (O. S.) 575, and Taylor, Gardiner & Co. v. Wooten, 19 La. 518, it was held that the promise of the planter to ship his crop, under circumstances somewhat similar to those here disclosed, was a nudum pactum. Such promises have, however, been repeatedly enforced since that time; the reason therefor (though it has not always been so stated) being that the factor, as the agent of the planter, between whom and himself the obligations are mutual, cannot be placed entirely at the mercy of his principal. Thompson v. Packwood, 2 La. Ann. 624; Lalande v. Breaux, 5 La. Ann. 508; Stewart, Hyde, & Co. v. Buard & Dranguet, 23 La. Ann. 201; Thornhill v. Picard & Weil, 24 La. Ann. 159; A. & E. Ency. of Law (2d Ed.) vol. 29, p. 511. Counsel for defendant argues that the discount charged cannot be allowed, for the reason that Lichtenstein & Son did not discount the notes (meaning, as he explains, that they did not have the notes discounted by some third person). The fact, however, is that the notes were discounted by Lichtenstein & Son themselves, and that the discount was not charged in addition to, but in lieu of, interest, from the date of the discount until the maturity of the notes, at which latter period only interest began to run, and up to which period the defendant had the use of the money.
The learned counsel also argues that the claim upon the note of $6,457.64 became merged in the judgment; that the mortgage, being merely ancillary to the note, necessarily falls, in the absence of any prayer for its recognition and enforcement; and that the judge a quo erred in decreeing, in the absence of any prayer to that effect, that the plaintiffs’ mortgage rights be reserved.
The closing language and prayer of the petition reads as follows:
“Therefore, fully reserving their mortgage right for the security of their said debt, in principal, interest, attorney’s fees, and costs, as hereinabove set forth, petitioners pray that the said E. W. Lyons be duly cited to answer hereto and served with a copy hereof, and that, after due trial, petitioners do have judgment against the said Lyons and recover of him the sum of $3,919.27, with interest chereon at the rate of 8 per cent, per annum from June 4, 1902, until paid, and the further sum of 10 per cent, on the aggregate of the said principal and interest. Finally, petitioners pray for costs and for all general and equitable relief.”
*546 The allegation that the petitioners reserve their rights with respect to the mortgage seems to be pregnant with a disclaimer of the intention to ask for any relief in that regard at the hands of the court, and that intention is made manifest by the fact that no such relief is asked. What effect the plaintiffs’ allegation or reservation may have, and whether such a reservation could properly be decreed upon a prayer to that effect, we need not here determine. The plaintiffs have prayed for no such decree, and in so far as it was rendered the judgment is ultra petitionem. Upon the facts set forth in the statement which precedes this opinion, the defendant is entitled to have the credit of February 26, 1901, increased from $1,825.93 to $2,033.43. We do not find that his assertion that the credit of May 10, 1900, should be increased from $121.21 to $342.10, is sustained by the proof.
Upon the whole case, our conclusion is that of the $4,848.33, which appear upon the statement “3-1” to be due to the plaintiffs, reduced by the credit of $2,033.43 to $2,814.90, the plaintiffs are entitled to recover, as the balance due upon the note of $6,-457.64 here sued on, in the proportion that the aggregate of the two notes (for $6,457.64 and $3,075.10) bears to the aggregate balance due, or say $1,908.95, and that upon the amount so recovered interest should be allowed at the rate of 8 per cent, from February 25, 1901, together with 10 per cent, upon the aggregate of principal and interest as attorney’s fees, and that the judgment appealed from should be further amended by eliminating therefrom the reservation with reference to plaintiffs’ mortgage rights, which are not before the court.
It is therefore ordered, adjudged, and decreed that the judgment appealed from be amended, in so far as to restrict the plaintiffs’ right of recovery in this suit to the balance due upon the note of $6,457.64 herein sued on, to fix that balance at $1,908.95, and to award judgment for that amount, with interest thereon at the rate of 8 per cent, per annum from February 25, 1901, until paid, and with 10 per cent, upon the aggregate amount of principal and interest as attorney’s fees, and in so far as to eliminate from said judgment so much thereof as purports to reserve to the plaintiffs any mortgage rights, which rights are not here made the subject of adjudication. It is further ordered, adjudged, and decreed that, as thus amended, said judgment be affirmed; the defendant, appellee, to pay all costs.