O’NIELL, Chief Justice.
 

 This is a suit on three promissory notes, representing loans made by the plaintiff, a finance company, licensed to do business under the provisions of Act No. 7 of the Extra Session of 1928, known as the Small Loan Law.
 

 , One of the notes is dated the 29th of April, 1931, is for $125, payable in 50 weekly installments of $2.50 each, and represents a loan made to William Green, at 10 per cent, discount, and for which he received $112.50. The second note is dated the 29th of July, 1931, is for $100, payable in 50 weekly installments of $2 each, and represents a loan made to Ernest Briscoe, at 10 per cent, discount, and for which he received $90. The third note is dated the 16th of September, 1931, is for $150, payable in 50 weekly installments of $3 each, and represents a loan made to Rita Green, at 10 per cent, discount, and for which she received $135. Each of the three borrowers signed the notes of the others as surety, so that all became liable in solido as makers of the three notes. They bore interest at 8 percent. per annum after maturity, and the stipulation that in the event of a failure to pay
 
 *1073
 
 promptly any installment the makers should pay to the finance company, as liquidated damages, '5 cents for each dollar in arrears, to “cover the cost of collection without employment of an attorney.” The notes bore also the stipulation that a failure to pay promptly any installment would mature all remaining installments, together with the interest, costs, and attorney’s fees, as stipulated. The stipulation in that respect was that, should the note be not paid when due, and should it be placed into the hands of an attorney for collection, the makers of the note would pay the attorney’s fee, fixed at 20 per cent, on the balance due, the fee to be not less than $15 in' any case.
 

 Rita Green died on the 8th of October, 1931, leaving as her heirs her son, William Green, and two daughters, Señora Green Briscoe, the wife of Ernest Briscoe, and Lolita A. Green. The three heirs accepted the succession of their mother unconditionally, and went into possession of her estate under an order of court. Señora Green Briscoe and Lolita A. Green, therefore, became liable, each for a third of the solidary obligation of the deceased, Rita Green, on the three notes. William Green, as we have said, was already liable in solido as one of the makers of the three notes. This suit therefore was brought against William Green and Ernest Briscoe as makers of the notes, and against Señora Green Briscoe and Lolita A. Green as heirs and legal representatives of Rita Green.
 

 The note for $125 was reduced to $49, the note for $100 was reduced to $60, and the note for $150 was reduced to $115, by payments of the installments up to a date near the 30th of December, 1931; on which date, several installments being in arrears on each note, the finance company declared the whole balance due, and placed the notes into the hands of the attorneys for collection. They sued for the balance due on each note, with interest at 8 per cent, per annum from the 30th of December, 1931, and 20 per cent, attorney’s fee on the balance due on the larger note, and the minimum fee on each of the two smaller notes.
 

 The defendants pleaded that the contracts were violative of the provisions of the Small Loan Law, and particularly (1) the provision against charging or contracting.for a higher rate of interest than 3%, per cent, per month, and (2) the provision against collecting interest in advance, which the defendants contend forbids the discounting of a note; and (3) the provision against compounding of interest.
 

 The case was submitted on an agreement as to.the facts, and was dismissed by the judge of the first city court, on the ground that the contracts were violative of the statute. On appeal the Court of Appeal for the parish of Orleans, with one judge dissenting, reversed the decision, and gave judgment for the plain-, tiff for the balance due on the notes ; but, instead of allowing the 10 per cent, discount, the court allowed interest at that rate per annum, on the net amount received on each loan, from the date of the note to the 30th day of December, 1931, and allowed interest at 8 per cent, per annum from that date on the balance due on each note. At that time, the Court of Appeal had decided, in Automobile Security Corporation v. Randazza, 17 La. App. 489, 135 So. 45, 674, and in Heymann v. Mathes, 18 La. App. 403, 137 So. 871, that a stipulation for the payment of attorneys’
 
 *1075
 
 fees was not forbidden by the Small Loan Law, even where the lender charged the maximum rate of interest allowed by the statute; and we had affirmed the ruling in both cases. But, before the decision of the Court of Appeal in the present case became final, that court, in the case of Foundation Finance Co. v. Robbins, 149 So. 166, overruled its decision in the Randazza Case and in the Heymann Case, and then held that the stipulation for attorneys’ fees, in a note for a loan of $300 or less, was to be regarded as charging interest, and that if the total amount of the interest so charged exceeded 42 per cent, per annum, the note was invalid. The Court of Appeal, therefore, granted a rehearing in the present case, because the defendants, relying upon the ruling in the Randazza Case and in the Heymann Case, had refrained from arguing in the present case that the stipulation for attorneys’ fees should be regarded as an interest charge.
 

 On rehearing,, in the present case, the Court of Appeal calculated that the 10 per cent, discount which was deducted from the loans was equivalent to a rate of 22% per cent, interest per annum, and the court considered the stipulation for 20 per cent, attorneys? fees as an additional charge of 20 per cent, interest per annum, making a total charge of 42% per cent, interest per annum, being % of 1 per cent, more than the statute allowed. For that reason the Court of Appeal set aside the decree which it had rendered in this case, and affirmed the decision of the first city court, declaring the contracts illegal, and rejecting the plaintiff’s demand.
 

 This court reversed the ruling of the Court of Appeal in the case of Foundation Finance Co. v. Robbins, 179 La. 259, 153 So. 833, and reinstated the ruling which had been made in Automobile Security Corporation v. Randazza, and in Heymann v. Mathes, that the stipulation in a note for $300 or less, for the payment of an attorney’s fee in the event of its being necessary to employ an attorney to collect the note after maturity, was not a charge of interest, and did not invalidate the note, even where the lender charged the maximum rate of interest allowed by the statute. Even if a stipulation in a promissory note for the payment of a certain percentage of the amount as an attorney’s fee in the event of its being necessary to employ an attorney to collect the note should be regarded as a disguised method of charging interest, or as a charge for the use of the money, the charge would not be a percentage per annum. There would be no reason, therefore, why this flat charge of 20 per cent, should be added to the annual rate of interest charged, ,in this case, even if the flat charge of 20 per cent, should be regarded as a charge of that much interest. It is sufficient, however, to say, on the subject of the 20 per cent, attorney’s fee, that we adhere to the opinion rendered in Foundation Finance Co. v. Robbins, 179 La. 259, 153 So. 833, that such a stipulation, for the payment of a certain percentage as an attorney’s fee, in a promissory note given for a loan ma'de under the provisions of the Small Loan Law, is not to be considered as a disguised method of charging interest, and does not invalidate the note, even where the rate of interest actually charged is the maximum rate allowed by the statute.
 

 Aside from the stipulation "for the payment of an attorney’s fee, the contention of the de
 
 *1077
 
 f&ndants in this case, that the plaintiff charged a higher rate of interest than 3% per cent, per month, is based upon two separate and independent propositions, viz., first, that the stipulation for the payment of 5 per cent, “as liquidated damages,” or to “cover the cost of collection without employment of an attorney,” in the event of a failure to pay promptly any one of the stipulated installments, was in reality a stipulation for the payment of excessive interest; and, second, that the stipulation that a failure to pay promptly any installment would mature all remaining installments was a stipulation to shorten the term of payment, which would have the effect of increasing the rate of the interest which was deducted as discount.
 

 The thirteenth section of the Small Loan Law allows a licensee to make loans for sums not exceeding $300 at a rate of interest not exceeding 3% per cent, per month, and declares:
 

 “Interest, discount or charges in excess of those permitted by this Act shall not be charged, contracted for or received, and if any such shall be charged, contracted for or received, the contract of loan shall be void and the licensee shall have no right to collect or receive any principal, interest or charges whatsoever.”
 

 In the eighteenth section of the statute it is declared:
 

 “No loan for which .a greater rate of interest, discount, or charge than is allowed by this Act has been contracted for or received, wherever made, shall be enforced in this State, and every person in any wise participating therein in this State shall be subject to the provisions of this Act.”
 

 Making the notes payable in 50 weekly installments, of equal amount, as was done in this case, made the term of the loan — for which the 10 per cent, discount was charged— equivalent to
 
 25y2
 
 weeks for the payment of the whole amount of the loan. That is ascertained by applying the rule, or formula, that, where the payment of a given sum of money is divided into a series of installments, of equal amount, and payable at the ends of equal intervals, the term of payment, or total number of the given intervals, for the payment of the whole amount of money, is determined by adding 1 to the number of installments and dividing the sum by 2. For example, if the loan of $100, in this case, had been payable in 1 week, it would have been equivalent to — or worth the same as — a loan of $1 for 100 weeks; and, if the loan of
 
 $100
 
 had been payable in 2 weekly installments, of equal amount, it would have been equivalent to — ■ or worth the same as — a loan of $1 for 150 weeks, or $100 for 1.5 weeks; and, if the loan of $100 had been payable in 3 weekly installments, of equal amount, it would have been equivalent to — or worth the same as — ■ a loan of $1 for 200 weeks, or $100 for 2 weeks; and so on, until we come to the result that, when the loan of $100 was made pay-able in 50 weekly installments, of equal amount, it was equivalent to — or worth the same as — a loan of $1 for 2,550 weeks, or $100 for 25.5 weeks. All of which may be demonstrated by considering that a loan of $100 payable in 50 weekly installments of $2 each is the equivalent of 50 consecutive loans, for 1 week each, the first loan being for $100 for 1 week, the second loan being for $98 for 1 week, the third loan being for $96 for 1 week, and so on, down to the fiftieth loan, for $2 for
 
 *1079
 
 1 week. Now, if we add up the sums of the 50 loans, $100 plus $98 plus $96 plus $94, and so on down to and including $2, they will amount to a loan of $2,550, for 1 week, which is equivalent to — or worth the same as — a loan of $1 for 2,550 weeks, or of $100 for 25.5 weeks. The same rule — and the same calculation — is applicable, of course, to the loan of $125, payable in 50 weekly installments of $2.50 each, and to the loan of $150, payable in 50 weekly installments of $3 each. Each loan was the equivalent of — or worth the same as —a loan for that amount payable in 25% weeks. For example, the loan of $150 payable in 50 weekly installments of $3 each was the Same as 50 consecutive loans for 1 week each, the first loan being for $150, the second being for $147, the third being for $144, and so on, down to the fiftieth loan, for $3, for 1 week. The total sum of the 50 loans would be $3,S25, for 1 week, which would be the same as a loan of $1 for 3,825 weeks, or a loan of $150 for 25.5 weeks.
 

 We see, therefore, that the 10 per cent, discount, which was charged for each of the three loans in this case, was in fact a charge of 10 per cent, for the use of the net amount of each loan (less the discount) for the term of 25% weeks.
 

 Charging 10 per cent, discount, as was done in this case, was charging $10 for the use of only $90, and was charging $12.50 for the use of only $112.50, and $15 for the use of only $135; which was charging 11.11 per cent, on the amount actually received by the borrower, in each instance, for the use of the money for 25% weeks. The rate of interest, therefore, on the basis of 52 weeks in a year, was 22.65 per cent, per annum, on each of the three loans.
 

 We agree with the Court of Appeal that the stipulation for the payment of 5 per cent, as liquidated damages, to “cover the cost of collection without employment of an attorney,” in the event of a failure to pay promptly any installment, would invalidate these notes if this charge, added to the rate of interest charged on the amount -actually received by the borrower, would make the rate of interest more than 3% per cent, per month. The thirteenth section of the statute leaves no doubt about that, viz.:
 

 “In addition to the interest herein provided for, no further charge or amount whatsoever for any discount, examination, service, brokerage, commission or other thing or otherwise shall be directly or indirectly charged, contracted for or received, except the lawful fees, if any, actually and necessarily paid out by the licensee to any public officer for the filing or recording or releasing in any public office any instrument securing the loan, which fees may be collected when the loan is made or at any time thereafter.”
 

 The reason why we held in Foundation Finance Co. v. Robbins that the stipulation for the payment of an attorney’s fee in case of its becoming necessary to employ an attorney to collect the note after maturity was not forbidden by the clause quoted, in a note given for a loan made at the maximum rate of interest allowed by this statute, was that the attorney’s fee was to compensate the attorney, and not the lender, and was contingent only upon the borrower’s making it necessary, by his default, for the lender to incur the expense. But that cannot be said of the stipulation for the payment of 5 per cent., as liquidated damages, to “cover the cost of col
 
 *1081
 
 lection without employment of an attorney.” The only reason why that stipulation did not invalidate the contracts in this case is 'that the 5 per cent., when added to the interest actually charged, did not make the rate higher than the statute allows. The statute forbids any such additional charge, as the 5 per cent, in this case, only when it is in addition to the rate of interest allowed by the statute, thus: “In addition to the interest herein provided for, no further charge or amount whatsoever * * * shall be directly or indirectly charged, contracted for or received, except the lawful fees,” etc. If the charge of 5 per cent., for “the cost of collection without employment of an attorney,” as stipulated in these notes, had been collected on every installment immediately after its maturity, the charge would have amounted to only 5 per cent, for the average term of 25% weeks, or (on the basis of 52 weeks in the year) 10.196 per cent, per annum. Add that rate to the annual rate of interest which was charged, as discount, 22.65 per cent., and the total rate would have been 32.846 per annum; which is as high as the 5 per cent, collection charge could have made the rate, and is 9.154 per cent, less than the maximum rate of interest allowed by the statute. We agree with the Court of Appeal, therefore, that the 5 per cent, collection charge did not invalidate the contracts.
 

 The next question is whether the stipulation that a failure to pay promptly any one installment would mature the remaining installments made the contracts usurious. The contention is founded, of course, upon the fact that that clause in the contract might cause the notes to fall due so soon after their date as to make-the 10 per cent, which was deducted as discount amount to a higher rate of interest than 3% per cent per month on the amount received by the -borrower. The effect of such a clause, in that respect, in a contract of loan, was determined in the case of Heirs of Williams v. Douglass, Sheriff, et al., 47 La. Ann. 1277, 17 So. 805, 808. In that ease, a loan, for a lax-ge sum, was made payable in 10 annual installments, represented by 10 promissory notes of the borrower, secured by mortgage, and the interest was calculated for the whole term, and was retained by fhe lender, as discount. The act of mortgage contained the clause that a failure to pay any one note would mature all remaining notes. The borrower-, Williams, paid the first, second, and third note, and made a partial payment on the foxxrth note, and, being then in default as to the balance due on the fourth note, he died. The holder of the unpaid notes, taking advantage of the px-ematurity clause in the act of mortgage, proceeded to foreclose the mortgage by executory process; and the heirs of Williams pleaded that, by shortening the term for which the interest had been deducted as discount, the holder of the notes had made the contract usurious, and had forfeited all of the interest. But the court held that the stipulation in the contract, that a failure to pay any one note at matux-ity would mature all remaining notes, was a lawful stipulation, even though the interest on all of the notes for the whole term of the loan was retained by the lender as discount. Hence it was held that the borrower could not, by his own default or breach of the contract, render the. contract usurious; but it was likewise held that the lender, who availed himself of his right to demand payment of the debt before the expiration of the term for which the in
 
 *1083
 
 terest had been paid, was obliged to remit the unearned interest. In so deciding, the court said:
 

 “Our conclusion is that this reduction ought to be made, because the amount of the indebtedness of the deceased [borrower], as represented by his 10 notes, was evidently predicated upon the theory that he, as maker and borrower, should retain and use the capital during that period of time. But, having exercised the option of the covenant in the mortgage, to precipitate the maturity of all the premature installments of the debt, the mortgagee necessarily assumed the corresponding duty of remitting all the capitalized interest that was unearned at the time of the attempted exercise of that right by the seizure and sale of the mortgaged property, on the 10th of December, 1894.”
 

 It is customary in making loans payable in installments — and in fact it is almost essential In such a contract — to stipulate that a failure to pay one installment promptly at maturity shall mature all unpaid installments. I-Ienee, if the Legislature, in enacting the Small Loan Law, had intended to impose a penalty upon a money lender for making such a stipulation in a loan payable in installments in which the interest is capitalized, the Legislature would have written the penalty into the statute. No such penalty is imposed unless the lender, 'by taking advantage of the prematurity clause in the contract, charges or receives for the use of his money (more than the rate of 3% per cent, per month. The prematurity clause itself, which is in the nature of a resolutory condition of the contract, is not contracting for the pasunent of something in excess of 3% per cent, per month for the use of the money. It was so held by the Supreme Court of California, with regard to such a clause, in Sharp v. Mortgage Security Corporation of America, 215 Cal. 287, 9 P.(2d) 819, 820, viz.:
 

 “It is also elementary that the contract must in its inception require a payment of usury or it will not be held a violation of the statute and it may not be judged after some default of the borrower, which default alone authorizes penalties or forfeitures which, if exacted in the beginning, would have been a violation of the statute. Conservative Loan Co. v. Whittington, supra [120 Okl. 137, 250 P. 485]; Clement Mortgage Co. v. Johnston, 83 Okl. 153, 201 P. 247; M. Lowenstein & Sons v. British, etc., Co. (C. C. A.) 7 F.(2d) 51, 53; 27 R. C. L. 208; Low v. Sutherlin, Barry & Co. (C. C. A.) 35 F.(2d) 443. The cases above cited are also authority for the proposition that a debtor cannot bring his creditor to the penalties of the usury law by his voluntary default in respect to the obligation involved, where no violation of law is present at the inception of the contract.”
 

 To the same effect is Spain v. Brent, 1 Wall. (68 U. S.) 604, 17 L. Ed. 619, viz.:
 

 “Where a paper does not contain a promise to pay anything absolutely in addition to the loan and the interest, and the payment of anything additional depends upon a contingency, and not upon the happening of a certain event, it is not sufficient to make a loan usurious.”
 

 The rule is stated in 27 R. C. L. 234, § 35, thus:
 

 “Under the principles laid down in the two preceding paragraphs, a provision in an agree
 
 *1085
 
 ment for the payment of money which accelerates the maturity of the debt on default in payment of either interest or an installment of principal does not constitute usury. It entitles the lender on default only to the principal and the interest then accrued.”
 

 Where a loan is made payable in installments in which the interest is capitalized, or retained by the lender as a discount, and where the contract provides that a default on one installment shall mature all unpaid installments, if the lender takes advantage of such a default by demanding payment of the balance due so soon as to make the discount, or the capitalized interest, exceed the rate of interest allowed by the statute, the statute is thereby violated. But that was not done in this case. When the plaintiff demanded payment of all of the unpaid balance of the debt, because several installments were in arrears, the amount of interest which would have been earned at the maximum rate allowed by the statute, on the net sum actually received by the borrower, in each instance, was more than the lender had retained as discount. In other words, if each one of the three borrowers had paid the balance due on the face of his note when the payment was demanded, the amount which he would have paid for the use of the money which he actually received would have been less than it would have amounted to at the rate of interest allowed by the statute. Accordingly, if we eliminate the attorneys’ fees, the amount now sued for is less than it would be if the lender had charged each borrower interest at the rate of 3% per cent, per month on the amount actually paid to the borrower, from the date of the loan to the date when payment of the unpaid balance was demanded, and 8 per cent, per annum on the unpaid balance thereafter, instead of deducting the 10 per cent, discount, which was capitalized in the notes. In making that calculation we have made allowance for the installments that were paid on each note before payment of the balance was demanded by reason of the default.
 

 We have compared the two cases decided by the Supreme Court of Texas, and cited by the judge who dissented from the majority opinion rendered by the Court of Appeal on this subject, viz., Parks v. Lubbock,
 
 92
 
 Tex. 635, 51 S. W. 322, and Shropshire v. Commerce Farm Credit Co., 120 Tex. 400, 30 S.W.(2d) 282, 39 S.W.(2d) 11, 84 A. L. R. 1269; and we believe that these decisions can be reconciled with the decision rendered by this court in Heirs of Williams v. Douglass, Sheriff, et al., 47 La. Ann. 1277, 17 So. 805. In Parks v. Lubbock, a promissory note payable five years after date, and bearing interest at 6 per cent, per annum, payable semiannually, represented by interest notes, bore the stipulation that it was to draw interest at the rate of 12 per cent, per annum (which was more than the law allowed) from date, if either the principal or interest remained unpaid ten days after due, and the note bore the further stipulation that if any interest note remained due and unpaid ten days, the whole of the prim-cipal and interest might be declared immediately due and payable. The stipulation that the note should bear interest at the rate of 12 per cent, per annum from date if not paid within ten days after maturity is what constituted usury, under the statutory definition of interest. Texas Rev. Stat. 1895,
 
 *1087
 
 art. 3097. In Shropshire v. Commerce Farm Credit Co., the character and language of the contract was such that the Supreme Court of Texas found it impossible to construe it otherwise than as a usurious loan. But, in the reasons assigned for refusing to grant a rehearing in that case, 39 S.W.(2d) 11, 12, the court said:
 

 “If the contract between these parties contained no language other than that, if default was made in the payment of any installment of interest, the principal of the note, ‘with interest,’ should be collectible at the creditor’s option, then such language would be fairly susceptible of the meaning that unearned interest was to be abated. So in Dugan v. Lewis, 79 Tex. 249-254, 14 S. W. 1024, 12 L. R. A. 93, 23 Am. St. Rep. 332, the language of the deed of trust, coupled with the explicit words of the note, made the contract susceptible of the interpretation that unearned interest was not collectible. But here the parties have used clear and positive language to negative the abatement of any portion of the unearned interest secured by the second lien deed of trust.”
 

 Under the doctrine of the case of Heirs of Williams v. Douglass, Sheriff, et al., we maintain that the so-called acceleration clause, in a note given for a loan made under the terms of the Small'Loan Law, does not invalidate the note unless the clause is so used or abused as to make the charge for the use of the money greater than the rate of interest allowed by the' statute.
 

 We concur in the opinion of the Court of Appeal that the deducting of a discount ifrom the amount of the loan, at the time of the loan, is not a violation of the provision in the thirteenth section of the statute: “Interest shall not be payable in advance.” That expression follows immediately the declaration that the rate of interest shall not exceed
 
 3y2
 
 per cent, per month. In the same section of the act it is provided: “Interest, discount or charges in excess of those permitted by this Act shall not be charged, contracted for or received,” etc.; which is the same as to say that, if a discount is deducted from the amount of the loan, in lieu of interest, the amount of the discount shall
 
 not be so great as to make the use
 
 of the money actually received by .the borrower cost him more than 3% per cent, per month. But there is nothing in the statute forbidding the deducting of a discount, in lieu of interest, or capitalizing the interest, if the charge for the use of the money does not exceed 3% per cent, per month on the amount actually received by the borrower. On the contrary, the implication which we have quoted from the thirteenth section is repeated in the fifteenth section, and in the first paragraph of the eighteenth section, referring to “any interest, discount,” etc., and is repeated again in the third paragraph, thus: “No loan for which a greater rate of interest, discount, or charge than is allowed by this Act has been contracted for or received, wherever made, shall be enforced,” etc.
 

 We concur also in the opinion of the Court of Appeal that the lender in this instance did not violate the injunction, in the statute, against compounding interest. This injunction is a part of that which forbids .the collecting of interest in advance, viz.: “Interest shall not be payable in advance or compounded and shall be computed on unpaid
 
 *1089
 
 balances.” The contention of the defendants that there was compounding of interest is based upon the stipulation for 8 per cent, interest per annum after maturity, on the face of the notes, which were discounted at 10 per cent. It is contended that, inasmuch as the 10 per cent, which was retained by the lender was in fact interest charged on the net amount which the borrower received, and inasmuch as this 10 per cent, was capitalized, or included in the amount of each note, the charge of 8 per cent, interest on the amount of the note after maturity was a charge of interest upon interest, as well as interest upon the principal sum received by the borrower. Article 2924 of the Civil Code permits the charging of interest after maturity on the whole amount of a note that has been discounted. The defendants cite Executors of Compton v. Compton, 5 La. Ann. 615, as denouncing the charging of interest after maturity on the face of a note in which the interest up to the date of maturity is capitalized; but, in that case, separate notes were given to represent the annual interest, to the date of maturity of the principal note. If that fact does not reconcile the decision with the language of article 2924 of the CiVil Code, and with the later decisions on the subject, it must yield to these decisions, viz., Scottish American Mortgage Co. v. Ogden, 49 La. Ann. 8, 21 So. 116, and Lichtenstein v. Lyons, 115 La. 1052, 40 So. 454. There is no such penalty as forfeiture of the amount of the loan, however, according
 
 to
 
 the thirteenth section of the statute, for compounding interest, unless it results in making the interest rate higher than
 
 3y2
 
 per cent., per month. The interest rate up to maturity, in this case, as we have shown, was well within the limit of
 
 3y2
 
 per cent, per month; and 8 per cent, per annum after maturity on the face of the note was only 8.8 per cent, per annum on the net sum received by the borrower, in each instance. The loan, therefore, did not at any time, before or after maturity, bear interest at a rate as high as 3% per cent, per month.
 

 The defendants pleaded also that the plaintiff failed to comply with the requii'ement of the fourteenth section of the act, to deliver to the borrower at the time of making the loan a statement showing in clear and distinct terms the amount and date of the loan, the date of maturity, the nature of the security given, if any, the name and address of the borrower, and of the licensee, and the rate of interest charged, with a copy of the thirteenth section of the act printed on the statement. It appears that the lender in these three instances did fail to obey the fourteenth section of the act; but the only penalty or consequence of such a violation, that we find in the act, is that, according to the sixth section, the state bank commissioner, called the licensing official, may revoke the lender’s license.
 

 Of the several defenses set up in this case, the one which we are doubtful about is the plea that the so-called acceleration clause in the notes makes the contract usurious. We take occasion, therefore, to suggest that the Legislature, now in session, ought to put that matter at rest by requiring the lender to stipulate in the contract, if it contains a so-called acceleration clause, and if the interest has been retained as a discount or is capitalized, that if the so-called acceleration
 
 *1091
 
 clause is resorted to, the unearned interest shall he remitted. The statute ought to be amended also .so as to limit the time for which a loan may be made at such a high rate of interest as 3% per cent, per month, and so as to forbid a higher rate of interest than 8 per cent, per annum after maturity of the debt.
 

 The judgment of the first city court and of the Court of Appeal is reversed, and it is now ordered, adjudged, and decreed that the plaintiff, Unity Plan Finance Company, Inc., recover of and from the defendants, William Green, Ernest Briscoe, Señora Green Briscoe, and Lolita A. Green, $224, with interest thereon at 8 per cent, per annum from the 30th of December, 1931, and $30 attorneys’ fees, and 20 per cent, on the principal and interest of $115, and the costs of this suit; this judgment is one in solido against the defendants, except that as to Señora Green Briscoe and Lolita A. Green each is liable for only a third of the amount of the judgment ; and if any one of the defendants pays more than the sum of his liability as a principal debtor, he or she shall have recourse against the principal debtor or debtors for whom payment is made.
 

 LAND and BRUNOT, JJ., dissent