156 So.2d 323 (1963)
Alex BERGER
v.
Mrs. Anna Shirley BURGLASS, Divorced Wife of Joseph DeSALVO.
No. 1035.
Court of Appeal of Louisiana, Fourth Circuit.
July 1, 1963.
Rehearing Denied October 2, 1963.
Certiorari Refused November 12, 1963.
*324 Cecil M. Burglass, Jr., Metairie, for defendant-appellant.
Leopold Stahl, New Orleans, for plaintiff-appellee.
Before SAMUEL, CHASEZ and HALL, JJ.
CHASEZ, Judge.
Mrs. Anna Shirley Burglass, divorced wife of Joseph DeSalvo, defendant in executory proceedings brought by Alex Berger to collect a $13,000.00 mortgage note, appeals suspensively from a judgment dismissing her rule against plaintiff, Alex Berger, and the Sheriff of the Parish of Jefferson for a preliminary injunction against the executory process.
On May 6, 1959, plaintiff, Alex Berger, loaned defendant, Mrs. Anna Shirley Burglass, divorced wife of Joseph DeSalvo, $10,000.00, taking defendant's note for $13,000.00 (including 30% of the amount loaned as discounted interest) payable in installments over a two year period, and providing for acceleration of maturity of the entire note, at holder's option, for failure to pay any installment punctually, and providing 8% per annum interest from maturity and 15% attorney's fees. To secure payment of the note defendant granted a mortgage on a tract of land in Jefferson Parish.
The first installment was not paid when due on November 6, 1959, and plaintiff has from that time consistently treated the entire balance as due from that date. The result of this acceleration of maturity, of course, is to attempt to make the effective rate of interest 60% per annum, since as of that date defendant had had only 6 months' use of $10,000.00 for $3,000.00 discounted interest.
Defendant paid plaintiff $100.00 on June 7, 1960, $100.00 on January 6, 1961, and $500.00 on January 11, 1961, on account of the note.
On March 14, 1961, defendant executed a notarial act of sale of a lot of ground to plaintiff for a recited consideration of $800.00 cash; and the same day, before the same notary, plaintiff executed an agreement, in consideration of $800.00 cash, not to make any claim on the note before June 6, 1961.
On April 12, 1961, defendant paid plaintiff $100.00 on account of the note.
On September 25, 1961, defendant executed a notarial act of sale of another lot of ground to plaintiff for a recited consideration of $800.00 cash; and the same day, before the same notary, defendant executed an agreement, in consideration of $800.00 cash, not to make any claim on the note before March 15, 1962.
On May 11, 1962, plaintiff instituted executory proceedings to foreclose the mortgage, praying for judgment for the whole $13,000.00, plus interest at 8% per annum from November 6, 1959 (6 months after the date of the loan), but allowing as a credit against interest the total of $800.00 paid on the note from time to time after November 6, 1959.
On June 20, 1962, defendant brought a rule for a preliminary injunction against the sale under executory process, reciting the loan of only $10,000.00 and the transfer of the two lots to plaintiff, and alleging interference with her efforts to borrow elsewhere to pay plaintiff, by refusing to deliver to her the title abstracts she paid to have prepared. Her prayer was for credit for $2,600.00 on account of the transfer of the two lots and *325 for nullification of all interest provisions, and for injunction against the sale because plaintiff claimed an excessive amount in the writ of executory process, and defendant was unable to stop the sale except by paying more than she owed plaintiff.
The district judge dismissed the rule for preliminary injunction, maintained the writ and ordered the sale under executory process. Defendant appealed suspensively to this court.
The judgment appealed from is undoubtedly correct insofar as it refused to enjoin the sale in its entirety simply because defendant contended the amount of the writ was excessive; Crowley Bank & Trust Co. v. Hurd, 137 La. 787, 69 So. 175 (1915); see also Mayfield v. Nunn, 239 La. 1021, 121 So.2d 65, 66 (1960), footnote 1, explaining refusal to grant writs under similar circumstances. If the amount of the writ is excessive the writ might be reduced but the sale cannot be enjoined insofar as the lesser amount admittedly due is concerned. Nevertheless, the judgment appealed from might require modification insofar as it maintains the original writ of executory process at the amount claimed by plaintiff.
On the amount of interest recoverable, we are of the opinion that plaintiff cannot collect discounted interest, plus maximum legal interest during the period of the discount on both loan and discount, plus bonuses for extensions during and after that same period.
In Williams' Heirs v. Douglass, 47 La. Ann. 1277, 17 So. 805 (1895), Williams borrowed $27,500.00 for which he gave his installment notes payable over 10 years for a total amount of $46,354.80, bearing 8% per annum interest from maturity and subject to an acceleration of maturity clause. The fourth note of the series was not paid punctually. Thereafter the holder of the notes elected, on December 10, 1894, to accelerate the maturity of the remaining notes by filing foreclosure proceedings on the property mortgage to secure the notes. In a proceeding similar to that before us now, Williams' heirs sought to enjoin the foreclosure sale, arguing, among other things, that the interest capitalized in the notes was payment for the use of the money borrowed for the full term of the loan, and that the notes should be reduced by the amount of the "unearned" interest when the holder elects to accelerate maturity. The court held:
"* * * Our conclusion is that this reduction ought to be made, because the amount of the indebtedness of the deceased, as represented by his 10 notes, was evidently predicated upon the theory that he, as maker and borrower, should retain and use the capital during that period of time. But, having exercised the option of the covenant in the mortgage, to precipitate the maturity of all the premature installments of the debt, the mortgagee necessarily assumed the corresponding duty of remitting all the capitalized interest that was unearned at the time of the attempted exercise of that right by the seizure and sale of the mortgaged property, on the 10th of December, 1894. * * *"
Williams v. Alphonse Mortgage Co., La. App., 144 So.2d 600 (1962), cited by plaintiff, did not involve an election to accelerate by the holder of the note. There the maker of the note elected to pay her discounted note in advance of maturity in order to obtain a 30% rebate on the unearned interest. On the maker's subsequent suit for a further refund on the ground that she had been charged usurious interest, this court simply held that the discounting of notes at an interest rate greater than 8% per annum is not usurious within the prohibition of LSA-C.C. Art. 2924. This case is in no way inconsistent with the rule of Williams' Heirs v. Douglass, that where the holder of the note elects to accelerate maturity he thereby remits the unearned capitalized interest. This rule has been recited with approval on other occasions, the latest *326 approval by the Supreme Court being in Unity Plan Finance Co. v. Green, 179 La. 1070, 155 So. 900, (1934), where the court said at page 905 that Williams' Heirs v. Douglass "held that the lender, who availed himself of his right to demand payment of the debt before the expiration of the term for which the interest had been paid, was obliged to remit the unearned interest."
In the present case plaintiff judicially admits in his petition that he "has exercised his option (to accelerate maturity) as holder of said note and declared the balance of said note due and payable"; plaintiff also alleged that the 8% interest from maturity was due and owing from November 6, 1959; and he prayed for interest from that date, subject to the aforesaid credit totaling $800.00. It is therefore clear, and also evident from the transactions for an extension of time, that plaintiff elected to accelerate the maturity of the entire note as of November 6, 1959. In Williams' Heirs it does not appear that the holder of the note elected to accelerate maturity prior to the actual filing of foreclosure proceedings, and that filing was the only "attempted exercise of that right" of acceleration. Our appreciation of the Williams' Heirs reasoning is that the attempted exercise of the right, the election by the holder to accelerate maturity, is the critical point at which unearned capitalized interest is remitted, because at that point the notes are matured by acceleration and the 8% interest from maturity stipulation becomes operative. The mere fact that, for whatever reason, the money loaned is not regained at that point, is not controlling; for the use of the money after the accelerated maturity the maker must pay the stipulated legal maximum interest of 8% per annum. Thus in the Williams' Heirs case, the maker's heirs had the use of the money long after the holder's election to accelerate the maturity, but they were made to pay only 8% per annum interest from the accelerated maturity. Plaintiff's judicial admission that he elected to accelerate maturity as of November 6, 1959, coupled with his acceptance of additional consideration to refrain from collection procedures, makes it clear that he elected to treat the notes as matured since November 6, 1959. He therefore must remit the capitalized interest unearned as of that date; that is, he can collect only 6 months' interest out of the 24 months contracted for, or one fourth, or $750.00 of the $3,000.00 capitalized interest. Accordingly, the writ of executory process must be reduced at least to a principal amount of $10,750.00. Of course plaintiff is entitled to the stipulated 8% interest from the accelerated maturity on the full amount of $10,750.00, unless some other cause disallows some part of the interest.
Defendant's two cash sales of land by authentic act are full proof of agreements they recite; LSA-C.C. Art. 2236. Defendant's complaint that the lots were worth $1,300.00 each, although sold for $800.00 each, cannot of itself affect the validity of the sales, nor can her use of the $800.00 recited (though no money actually passed hands) to pay the consideration for the extension agreements.
Defendant contends, however, that the two extension payments of March 14, 1961, and September 25, 1961, constituted usurious interest. The general rule is well settled that bonus payments for extensions constitute interest and, if the interest so paid exceeds the legal maximum, usury; Chadwick v. Menard, 104 La. 38, 28 So. 933 (1900). Plaintiff has referred us to two cases he claims are exceptions to that general rule.
The first case, Allemand v. Babineaux, 165 So. 724 (La.App.1936), is obviously not an exception to the rule at all. There for a 10-year extension of a note the maker gave the holder certain mineral rights of speculative worth and also agreed to pay 8% per annum interest for the 10-year period, payable ten years later upon the extended maturity of the note. The court pointed out that interest for 10 years payable 10 years hence is worth less than interest payable *327 every year for 10 years, and found the actual difference in that case was $342.00, so that the interest paid as such amounted to $342.00 less than the maximum legal interest. The mineral rights were found to be worth no more than $342.00, and therefore the total paid by the maker for the 10-year extension did not exceed 8% per annum.
The second case, Robinson Lumber Co. v. Tracka & Boudreau, 173 La. 461, 137 So. 853 (1931), does constitute an exception to the general rule stated above and recognized in the Robinson case itself. In Robinson the note for the full price of a separate timber estate was secured by mortgage on the timber estate. The timber estate was created (by a third party) for only a two-year period. When the note was not paid when due 120 days after its issue, the maker gave the holder another note in consideration of a 90-day extension, which of course also extended the date on which the accessory right of mortgage could be exercised. When the holder sued to collect the second note, the court found unusual circumstances which justified an exception to the general rule. The exception is, that where the maker who obtains an extension derives some benefit over and above the usual advantages of a mere extension, his payment for the extension and unusual benefit will not be treated as mere interest subject to usury limitations. In every extension of time to pay there exist the advantages which extra time affords, principally the opportunity to avoid a forced Sheriff's sale below market value (whether of mortgaged property or of property sold under fi. fa.), either by a leisurely sale at which market value can be obtained or by borrowing to pay off the indebtedness sued upon. The unusual benefit afforded the maker in the Robinson case was totally different in nature: the extension was sought in order to and did enable the defendants time to cut and remove the timber and to manufacture and sell lumber, from which they expected to receive a price far in excess of the value of the standing timber estate, and thus make the "large profit" of which the court spoke as consideration for the second note. The profit thus found by the court as consideration for the bonus for an extension which made the usury law inapplicable was therefore not the usual advantage resulting from a leisurely sale instead of a forced one, but was an unusual benefit resulting from the holder's allowing the maker to operate a lumber manufacturing business. Moreover, plaintiff suffered a detriment in that case not present here, in that the mere granting of the extension reduced his security; the timber estate had only one year and eight months lift left, and to the extent that an extension reduced that life the worth of the security was diminished. An extension for a year and eight months would have destroyed it entirely; the 90-day extension doubtless also somewhat reduced its worth. In the present case the maker of the note received no unusual benefit from the extension, but only the usual and necessarily resultant benefits of being able to sell at market or refinance; and the holder suffered no diminution of security whatsoever. Therefore the present case is clearly not within the exception Robinson makes to the general rule that bonus payments for extensions are treated as interest and, if excessive in rate, as usury. The question is not simply whether the bonus payments were supported by consideration; every usurious contract originated with some kind of consideration, but the usury is nevertheless reprobated by law.
The bonuses were undeniably in addition to the legal maximum of 8% interest already stipulated in the note; and they were equally undeniably usurious. The penalty for usury is forfeiture of the entire interest so contracted; LSA-R.S. 9:3501. Thus plaintiff can collect no interest for the periods covered by the extensions, namely from March 14, 1961, to June 6, 1961, and from September 25, 1961, to March 15, 1962. Because the note itself was not usurious, he can collect the interest for the other periods outside of the usurious extension periods; Lalande v. Breaux, 5 La.Ann. 505 (1850).
*328 Defendant asked for and is entitled to credit for the payments for the extensions. She did not seek to set aside the sales because of their usurious consideration, and that issue is theretofore not before us. We cannot allow her the $2,600.00 she claims, because plaintiff never agreed to that valuation of the lots; both agreed to $800.00 for each lot in the notarial sales, and we therefore allow defendant credit in the total amount of $1,600.00, attributable as hereafter set forth.
We therefore compute the amount of the true indebtedness, and the proper amount of the writ, as follows. As of November 6, 1959, defendant owed $10,750.00 plus 8% per annum interest from that date. That interest amounts to $860.00 per year or $2,356 per day. Defendant's payments totalling $700.00 as of January 11, 1961, and $461.57 of her $800.00 payment of March 14, 1961, are all attributable to interest. These amounts total $1,161.57, being $860.00 for the year from November 6, 1959 to November 6, 1960, and $301.57 for the 128 days from November 6, 1960 to March 14, 1961. The remaining $338.43 of the $800.00 payment of March 14, 1961, is attributed to principal, reducing the principal balance to $10,411.57. No interest being collectable from March 14, 1961 to June 6, 1961, the period of the first extension at usurious interest, defendant's payment of $100.00 on April 12, 1961, further reduced the principal balance to $10,311.57. Interest on that amount at 8% is $2,260 per day. Defendant's payment of $800.00 on September 25, 1961, is attributed $250.86 to interest for the 111 days from June 6, 1961 to September 25, 1961, and $549.14 to principal, thus reducing the principal balance as of September 25, 1961, to $9,762.43. Interest is not collectable from September 25, 1961, to March 15, 1962, the period of the second extension at usurious interest. No payments have been made since March 15, 1962, and interest is thus due from March 15, 1962, on the principal balance of $9,762.43.
Accordingly, for the foregoing reasons, the judgment appealed from is affirmed insofar as it refused to enjoin the sale in its entirety; but it is modified insofar as it refused to reduce the amount of the writ of writ of executory process, and the amount of the writ is hereby reduced to the principal amount of $9,762.43, with interest at 8% per annum from March 15, 1962, until paid, together with attorney's fees of 15% and all costs hereinafter incurred in execution of the reduced writ; and the writ of executory process shall be maintained and executed up to the amount hereinabove indicated. Costs through this appeal are to be borne by plaintiff-appellee.
Affirmed as modified.